## DUMONT *vs.* RUEPPRECHT.

[BILL IN EQUITY FOR DISSOLUTION OF PARTNERSHIP.]

1. *Construction of articles of partnership.*—Where the articles of partnership provided, that the active partner should be entitled to one fourth of the net profits, and, if his share of the profits did not amount to $3,000 at the end of any one year, that the other partner should pay him whatever sum might be necessary to make up that amount ; that each partner might invest in the partnership, as capital, an amount not exceeding $10,000, but should not draw out during the year, without the consent of his co-partner, any portion of the capital thus invested ; that each might, from time to time, draw out of the moneys of the partnership, for his private use, a specified sum per month ; and that the books should be balanced, and a balance-sheet made out, at the end of each year,—*held*, that the resident partner was entitled to receive $3,000 at the end of each year, although the business of the year resulted in a loss to the firm ; and that although he allowed his share of the profits, at the end of the first year, to remain to his credit on the books of the firm, it was not thereby invested in the partnership, but remained his private property, and might be used or withdrawn by him at any time.

2. *Dissolution of partnership ; decreed as of what date.*—A court of equity, in decreeing the dissolution of a partnership, may declare at what date the contract shall be at an end ; but it may be questioned, whether a mere violation of the articles of partnership by the defendant, not resulting in loss or injury, would make it proper for the court

to fix the date of the dissolution at an earlier day than the abandonment of the partnership by the aggrieved party; and where the only effect of a modification of the chancellor's decree, so as to make the dissolution take effect as of an earlier day, would be to deprive the defendant of the right to the compensation stipulated in the articles, and that compensation is shown to be a reasonable allowance for the services actually rendered by him, the appellate court will not disturb the decree.

APPEAL from the Chancery Court at Mobile. Heard before the Hon. M. J. SAFFOLD.

THE bill in this case was filed, on the 19th April, 1859, by J. E. Dumont, against Albert Ruepprecht, asking the dissolution of a partnership which existed between the parties, and a settlement of the partnership accounts. The articles of partnership, the construction of which was in controversy, were in the following words:

"Memorandum for articles of partnership, to be entered into between J. E. Dumont and Albert von Ruepprecht, both of the city of Mobile. J. E. Dumont, general and commission-merchant in Mobile, in consideration of, and in reward for the faithful services rendered to his house by A. von Ruepprecht, hereby agrees to take A. von Ruepprecht into partnership, from the date of the 1st September next, for the term of four years, under the following conditions:

"The form or style of the firm [is] to be J. E. Dumont & Co. The business of said firm shall be carried on in the city of Mobile, and in such other ports as the partners may deem beneficial to their common interests. That A. von Ruepprecht shall be entitled to, and receive for his share, one-fourth of all the net profits of the firm, after all losses, charges, expenses, and doubtful debts, which may have been incurred, and are incidental to the business, have been properly deducted. In case A. von Ruepprecht's share in the net profits, as above mentioned, should not amount to $3,000, (say three thousand dollars,) at the close of each year, then J. E. Dumont agrees to pay said von Ruepprecht such sum as may be required to make up the

above amount of $3,000. Each partner is to be at liberty to invest into the stock of the concern a capital not exceeding $10,000, say ten thousand dollars; such sums bearing interest, at the rate of eight per cent. *per annum*, to the credit of the respective partners. If any of the partners should wish to withdraw the whole or part of his capital out of the concern, his intention is to be made known to the other partner six months previous to such withdrawal, and must have received the consent of the other partner thereto in writing. Each of the partners shall be at liberty, from time to time, to draw out of the moneys of the partnership any sum or sums, not exceeding the sum of $200, (say two hundred dollars,) for his own private use every month. That each of the partners will diligently employ himself in the business of said firm of copartnership, and be faithful to the other in all transactions relating to the same, and give a due account of the same, and all letters and things which may come to his hands or knowledge concerning the said partnership, to the other, as the same shall be required.

"It is understood and agreed between the partners, that J. E. Dumont is about to proceed to Europe, for the purpose of promoting by his personal exertions the interests and welfare of the firm by all legitimate means; such as travelling, and soliciting orders for cotton from the various friends of the firm; to form new connections for the same; to establish special agencies where they may be established of advantage—in fact, to do all things which he may judge requisite for the interests of the firm. J. E. Dumont, during his absence from Mobile, and travelling in Europe for the benefit of the house, shall be allowed and credited $800 (say eight hundred dollars) a year, as a contribution to his travelling expenses; the same to be charged to the general expense account. A. von Ruepprecht agrees to remain at the place of business in Mobile, except the months of July, August, and September, and undertake the management and direction of the affairs of the house in all its branches, and use his best efforts and discretion in

12

sustaining and extending the credit and good name of the firm. Should Mr. Ruepprecht be desirous to make a trip to Europe in 1857, or 1858, during the summer months (from end of May to end of September), he is at liberty to do so, if it can be done without injury to the mutual interests of the partners.

"Neither of the partners shall, by himself, or with any other person or persons, either directly or indirectly, engage in any business, except the business of the partnership; and neither of them shall employ any of the moneys or effects of the said partnership, or engage the credit thereof, except on account and for the benefit of the partnership; and neither of them will give bond, or go bail, nor endorse, or become security in any manner, for any person or persons whatsoever. The books of account of said partnership shall be kept by double entry, and shall contain a full record of all the moneys, goods, effects, debts, sales, purchases, receipts, payments, and all other transactions of said partnership; and that said books of account, together with all bonds, notes, bills, assurances, letters, and other writings belonging to said partnership, shall be kept at the counting-house in Mobile, and each of the partners shall have free access at all times to examine and copy out of the same. On the 30th September, 1857, and on the 30th September in each succeeding year during the existence of the partnership, the books shall be balanced, a balance-sheet be made out in duplicate, and shall be signed by each of the partners within one month; and each of the partners shall take one of the balance-sheets into his custody, and shall be bound and concluded by every such balance-sheet respectively, unless some manifest error shall be discovered therein within twelve calendar months next ensuing, and be signified by either of the partners to the other; and then, and in such case, such error shall be rectified.

"In witness whereof, we have hereunto set our hands and seals to two copies, both of this tenor, this 12th day of May, 1856."

The partnership commenced business on the 1st Sep-

tember, 1856, and continued without interruption until January, 1859, when Dumont returned from Europe, and, on the 3d February, 1859, excluded Ruepprecht from the counting-room, and refused all further intercourse with him. The complainant sought by his bill a dissolution of the partnership, on the ground that the defendant had neglected and mismanaged the partnership business, and had been guilty of several distinct violations of the articles of partnership ; the principal charges of misconduct being, that he had drawn out from the moneys of the firm, for his own private use, a larger amount than he was entitled to receive, and that he loaned $3,000 of the moneys belonging to the firm to Magee & Cluis, which was lost by their failure. The defendant filed an answer, denying all the charges of misconduct alleged against him, except in reference to the loan to Magee & Cluis ; and as to that matter he alleged, that Magee & Cluis were personal friends of the complainant and himself, and were in good credit when the loan was made, and that the debt, instead of being lost, was well secured.

At the July term, 1859, the cause was brought to a hearing before Chancellor KEYES, who held, that the state of feeling between the parties was such that the partnership business could no longer be successfully prosecuted, He therefore decreed a dissolution of the partnership, to take effect as of the 3d February, 1859, and ordered an account to be taken by the master. At the ensuing March term, 1860, the master reported, that the business of the partnership during the first year resulted in a profit of $25,864 03, during the second year in a loss of $17,518 02, and during the third year, up to the time when the complainant excluded the defendant from the counting-house, in a loss of $1,992 29 ; that the defendant was not personally responsible for any loss sustained by the firm, and had not drawn at any time more than was due to him ; and that there was a balance due to the defendant, which, with interest up to the day on which the report was made, amounted to $2,859 39. The complainant filed several ex-

ceptions to the master's report. All of which were overruled
by the chancellor (Hon. M. J. SAFFOLD), who confirmed
the report, and rendered a decree in favor of the defendant,
for the balance ascertained to be due to him. From this
decree the complainant appeals, and assigns the same as
error, together with the instructions to the master in taking
the account, and the overruling of the exceptions to the
master's report; and there was a cross appeal by the de-
fendant.

F. S. BLOUNT, for appellant.
P. HAMILTON, *contra.*

R. W. WALKER, J.—Much of the controversy in this
case turns upon the construction to be given to the articles
of partnership; and the most material questions presented
by the record will be disposed of, when the respective
rights and duties of the parties under the articles are ascer-
tained.

By their agreement, these parties formed a partnership,
one-fourth of the net profits of which was to belong to
Ruepprecht; and it was stipulated, that if Ruepprecht's
share of the net profits should not amount to $3,000 *at the*
*close of each year,* Dumont was to *pay* him such sum as might
be required to make up the amount of $3,000. It is too
clear for dispute, that by this contract Dumont guarantied
that Ruepprecht should receive in any event $3,000. This
was the *minimum* sum. If one-fourth of the net profits
exceeded that sum, he was entitled to the excess; but, if
his stipulated share of the profits for any year did not reach
that amount, or if no profits were realized, Dumont was, in
either case, personally bound to pay him that sum. It ap-
pears that no profits were realized during the second year;
and according to the agreement Dumont became personally
liable to pay Ruepprecht $3,000. Unless, therefore, there
was something in the conduct of the latter which deprived
him of that right, the fact that he credited himself with
the sum of $3,000 on the books of the firm, for the second
year, forms no ground of complaint.

It is shown that Ruepprecht's share of the profits of the first year was $6,466·01; that during that year he drew out $3,376 28; that during the second year he drew out $2,994 10; and that during the portion of the third year that he continued in charge of the business, he drew out $1,724 63. The right of Ruepprecht to draw out more than $200 per month, and the question whether his share of the profits of the first year, beyond $200 per month, was, as between the parties, liable to the payment of the losses of the second year, may be considered together.

The stipulation that, if Ruepprecht's share of the profits did not amount to $3,000 *at the close of each year*, Dumont was to *pay* him such sum as might be required to make up that amount; and the clause which provides that the books shall be annually balanced, and a balance-sheet made out and signed by each partner, show two things—*first*, that, as between the parties, Ruepprecht was to bear no part of the losses of any year, except so far as they might reduce his share of the profits of that year to $3,000; and, *second*, that each year's business was to stand by itself, and be closed by itself. Each partner had, by the articles, the privilege of investing in the stock of the concern a capital not exceeding $10,000,—the sum so invested to bear interest to the credit of the partner putting it in; and neither partner was to be at liberty to withdraw any part of the capital thus invested, without giving his co-partner notice, and obtaining his consent to the withdrawal. The articles do not, as it seems to us, require the partners to let their respective shares of the profits of any one year remain in its business for the succeeding year. On the contrary, we think that, at the close of each year, each partner became entitled to his share of the profits of that year, as his private property, to be disposed of as he might please. He was not bound to invest it as so much capital in the stock of the concern. If he did so invest it, he was entitled to interest upon it. But the mere fact that Ruepprecht suffered a portion of his share of the profits of the first year

to remain to his credit on the books of the firm, without drawing interest, was not an investment of that amount in the capital stock of the concern, but a mere deposit of so much money, to be subject to his order, and to be drawn out when he might choose. The firm was his debtor to that amount, and, as between the partners, this sum was not liable for the losses of the succeeding year.

The articles provided, that each partner should be at liberty, from time to time, "to draw out of the moneys of the partnership" any sum, not exceeding $200, for his own private use every month. This clause cannot be construed as prohibiting the partners from drawing out the respective shares of profits which, at the close of each year, might stand to their credit on the books of the firm. The balances, thus ascertained, were not "the moneys of the partnership," but the private property of the partners respectively. The prohibition has reference solely to the funds of the firm in hand before the result of the current year's business is settled, and it cannot be applied to the balances of profits which, on the annual settlements provided for, might be found due to each partner. These ascertained balances became private property ; and if they were simply left with the firm, but not invested as capital, they are to be held as money loaned the firm by the partner, and not as 'money of the partnership.'

It appears that Ruepprecht did not draw out more than $200 per month till the result of the first year's business was known. After that he drew more; but he did not draw out during that year as much as his share of the profits. Independent of this, we think it is too late for Mr. Dumont to complain that Mr. Ruepprecht drew out more than $200 per month during the first year. The balance-sheet of that year's business was made out on the 30th September, 1857, and forwarded to Mr. Dumont. That balance-sheet showed that the share of profits to which Ruepprecht was entitled was $6,466, and that the amount which stood to his credit on the books of the firm at the close of the year was $3,089 73. From this it was ap-

parent that Ruepprecht must have drawn out $3,376 28 during that year. Though thus notified that Ruepprecht had drawn out more than $200 per month during the first year, Dumont made no complaint on that account for more than twelve months; and we think it is now too late to insist upon it.

The sums drawn out by Ruepprecht during the second year amount, in the aggregate, to $2,994 10; whereas the balance of profits due him on account of the first year's business was $3,089 73. This balance, we have seen, he had a right to draw, when, and in what sum he chose. The firm made no profits during the second year; and according to the articles Dumont was bound to pay Ruepprecht at the end of that year $3,000. This amount, added to the unexpended balance of the first year's profits, ($95 63,) left to his credit at the beginning of the third year $3,095 63. During the third year, Ruepprecht drew out but $1,724 66; so that he was not, at any time during the second or third year, equal in his drafts to the amount due him at the close of the preceding year.

2. What we have said disposes of the controversy between the parties, so far as it relates to the construction to be given to the articles of partnership. All the other questions presented by the record arise out of certain charges of misconduct and violation of duty, made by the complainant against the defendant. The first specification we shall consider separately, and pass it by for the present. We do not deem it necessary to go into a detailed discussion of the other charges, but content ourselves with saying in reference to them, that, after a careful examination of the evidence, we think that no case of misconduct, or gross neglect, by the defendant, resulting in injury to the firm, has been made out.

The first specification relates to a loan of $3,000 of the money of the firm by Ruepprecht to Magee & Cluis. In thus lending the money of the firm, Ruepprecht was guilty of a breach of the articles of partnership. When a dissolution is decreed for such a cause, the court may declare

at what date the contract of partnership shall be at an end. *Durben v. Barber*, 14 Ohio, 315; *Johnston v. Fogg & Van-derslice*, 27 Ala. 432. It is now insisted, that the dissolution in this case should be made to date back to the 12th March, 1857, the time at which the loan was made to Magee & Cluis. But it appears that, although Magee & Cluis failed, their note has been settled by other parties, in pursuance of an arrangement for that purpose made by Ruepprecht, so that, in point of fact, no loss has been sustained by the firm of J. E. Dumont & Co. It may be questioned, whether a mere violation of the articles, without injury, would make it proper for the court to fix the date of the dissolution at a time earlier than the abandonment of the partnership by the aggrieved party. Indeed, none of the cases which assert the principle, that the court may declare at what date the contract shall be at an end, seem to have fixed the date of the dissolution at a time prior to such abandonment, and notice thereof to the offending partner.

In the present case, we do not perceive that the action of the chancellor, in regard to the date of the dissolution, affords the appellant any just cause of complaint. All the profits that were made by the firm, were made during the first year; and this loan of the firm money was not made until near the close of the business season, when most of the profits had been realized. Of his share of the profits which accrued prior to the date of the loan, Ruepprecht would not be deprived by a decree fixing that as the time of the dissolution. The only effect of such a modification of the decree would be to deprive the defendant of the annual allowance of $3,000, to which, under the articles, he was entitled after the first year. But it is shown that Ruepprecht conducted the business of the concern, devoting his whole time thereto, from the date of the loan, until he was excluded from any further interference with the affairs of the firm by the complainant, in January, 1859. For the services rendered by him during this period, a court of equity, supposing that the dissolution should relate back to March, 1857, would not refuse him just com-

pensation; and, on the facts disclosed, we cannot say that $3,000 *per annum* would be too large an allowance for such services. For these reasons, we are not disposed to disturb this feature of the decree.

On the whole, our opinion is, that the appellant (Dumont) has failed to show any reversible error, and the decree must be affirmed.

On the suggestion of the counsel for Ruepprecht, the appeal taken by him is dismissed, at his costs.