243 So.2d 23

**Vermelle Atkinson FRYM, as Executrix of the Estate of Lloyd Percy Taylor**

**v.**

**Lucille RAMSEY.**

**6 Div. 793, 793–A.**

Supreme Court of Alabama.

Jan. 7, 1971.

Roderick M. MacLeod, Jr., Birmingham, for appellant.

Marshall H. Fitzpatrick, Birmingham, for appellee.

MADDOX, Justice.

Appellant Vermelle Atkinson Frym as executrix of the estate of Lloyd Percy Taylor, deceased, filed her bill in the circuit court of Jefferson County, seeking an accounting and determination of the amount due his estate under a partnership agreement. The bill alleged that the decedent and Lucille Ramsey, here the appellee, had been engaged in the operation of a partnership known as Doctors Answering Service. The bill alleged that under the terms of the

partnership agreement, in the event of the death of either partner, the survivor could elect to continue the business and purchase the deceased partner's share by paying to the deceased partner's estate an amount equal to the deceased's share of the profits for a period of 24 months after his death. The shares were on the basis of 60% to Taylor and 40% to Ramsey.

The part of the partnership agreement governing the transfer of the business after one partner's demise is paragraph 8:

"8. The partners recognize that the principal value of the business to be conducted by the partnership is not in physical assets but is in the reputation and good will of the business and in the contracts for service to be performed for its clients and in order to fix a value of each partner's share to be paid to either partner's estate in the event of death, the partners agree that the surviving partner may conduct the business and shall purchase the deceased partners (sic) share by paying to the estate of the deceased partner an amount equal to the deceased partner's share of the profits of said partnership for a period of twenty-four (24) months after the death of the deceased partner or, in the alternative, the surviving partner may sell the business to a third party and shall pay the estate of the deceased partner an amount equal to that partner's share of the profits of the business for the twelve months immediately preceding the death of the deceased partner. * * * "

Three claims were made in the bill:

1. For accumulated profits existing in the partnership at the time of Taylor's death which he allegedly had not withdrawn and to which he claimed he was entitled.

2. For the payment of Taylor's share or 60% of the profits for 24 months after his death.

3. For unauthorized expenditures of the partnership assets by Ramsey.

The court determined that an accounting between the parties was necessary for a final adjudication of the cause, and therefore referred the matter to the register.

The only contention made by the appellant on this appeal is that the register erred in not allowing to Taylor's estate an amount representing profits earned during Taylor's lifetime, but which he had not withdrawn from the business as of the date of his death.

The adverse ruling of which the appellant complains is found in paragraph 6 of the register's report:

"6. That any amounts payable to Lloyd Percy Taylor but left in the business enterprise by him during the period from May 27, 1964 to August 15, 1966, are to be considered as capital under paragraph three of the partnership agreement."

Paragraph 3 of the partnership agreement which the register found controlling as to the disposition of the amounts payable to Lloyd Percy Taylor reads:

"3. Lucille Ramsey shall conduct the operation of said business with the aid of any such other employees as the partners shall agree to be reasonably necessary and while Lucille Ramsey does actively conduct said business she shall receive a monthly draw of $200 which sum shall be charged against her forty percent share of the profits of said business. In the event the $200 per month draw by Lucille Ramsey shall exceed forty percent of the profits of the business in any calendar year, Lucille Ramsey shall be entitled to retain the difference between forty percent of profits and Two Thousand Four Hundred Dollars ($2,400.00). L. P. Taylor shall be entitled to draw against his share of the partnership profits quarterly and shall draw an amount which is reasonable under the circumstances as shown by the balance sheet to be prepared as provided in paragraph five hereinbelow and so as not to impair the operation of the business by

unduly depleting the capital or bank account of said business. There shall be an accounting between the partners at the end of each calendar year."

■ Appellant argues that the profits left in the business by Taylor did not become capital and that these unwithdrawn profits should be an asset to his estate. Unquestionably, the law of this state seems to be that where profits have been earned by a partnership but not distributed to a partner, such profits do not become capital of the partnership upon the death of the partner, but are an asset of the deceased partner's estate and become payable to his personal representative. See Dumont v. Ruepprecht, 38 Ala. 175 (1861).

■ Appellant contends that as of August 16, 1966, the date of Taylor's death, there was the sum of $2,608.08 which represented Taylor's share of profits which he had not withdrawn. Appellee denies this here on appeal and states that the record shows that there were no profits which Taylor had not withdrawn.

One of appellant's main arguments is based upon appellee's answer to her complaint. In paragraph 5 of her complaint appellant alleged that:

"5. Said agreement provided in part as follows:

'2. The partners agree that they will share profits and expenses and losses, if any, in the following manner: Sixty percent (60%) to L. P. Taylor and forty percent (40%) to Lucille Ramsey.'

"At the time of the death of Lloyd Percy Taylor, there were accumulated profits in the partnership business which had not been drawn out or paid over to Lloyd Percy Taylor and to which he was entitled at the time of his death, and Complainant avers that although, in her capacity as Executrix of the Estate of Lloyd Percy Taylor, she has made demand upon the Respondent, Lucille Ramsey, for the payment of these said profits, the Respondent has failed or refused to make payment."

Appellee's answer read as follows:

"5. Respondent admits the allegations of Paragraph Five except that she specifically denies a demand has been made upon her for the payment of profits by the complainant or that she has failed to or refused to make payment."

Even assuming that there were accumulated profits at the time of Taylor's death, the complainant would have had the burden of proving the amount of such profits.[1]

Extensive testimony was taken before the register concerning the method by which the parties operated the partnership, including testimony about the operation prior to the execution of the formal agreement here involved. Two accountants testified. One had kept the partnership books—the other was the son of the appellant and worked for an accounting firm. Both accountants were essentially in agreement as to the amounts which had been received and spent by the partnership. During some of their testimony the accountants would refer to figures on documents which are either not before us or we cannot determine to which figures the accountant was directing the register's attention.

We might point out that the register made no finding that Taylor had profits accumulated at the time of his death in the sum of $2,608.08, although he did find

---

1. Appellee's attorney, at the hearing, made the following comment to the register:
"MR. NORMAN:
I also point out to the Court that he had in effect stated that there were various profits and all which are due to be distributed and we take the position that the burden is on the complainant to show what those profits are and to produce testimony, and insofar as the 7th allegation, which has to do with various expenses being paid which were unnecessary and unreasonable, it is incumbent upon them and their case in chief if we are going to be called upon to answer it in any way."

that any accumulated profits became a part of the capital under the terms of the partnership agreement. The appellee contends here, and certainly not without some support in the record, that Taylor had indeed drawn out more than he was actually entitled to receive as of the date of his death. It seems undisputed that the total profit of the business in 1964 was $4,868.92, and during 1965 was $7,707.22, and during the first seven and one-half months of 1966, up until Taylor's death, was $3,492.71. Taylor drew $3,189.71 in 1964, $3,667.68 in 1965, and $2,425.00 before his death in 1966.[2]

Witness Leonard (appellant's son) testified that the draw for Taylor during 1966 was $2,425.00.

Thus, from the record, it appears that in 1964 Taylor was entitled to a profit of $2,066.21, but that he actually drew $3,189.71 or $1,123.50 more than he· was entitled to draw at that time. In 1965, he was entitled to draw $5,007.22, but only drew $3,667.68, therefore withdrawing $1,339.54 *less* than he was entitled to draw, but during 1966 he was entitled to draw $1,942.71, but drew $2,425.00 or $482.29 more than he was entitled to draw. This would mean Taylor drew $266.25 *more* in profits than he was entitled to draw.

Based on these figures, even assuming that the appellee admitted there were undrawn profits, the appellant's own witnesses not only failed to prove the amount of such unwithdrawn profits, but actually proved that Taylor had withdrawn more than he was entitled to draw. Therefore, even assuming without deciding that the register committed error in determining that the unwithdrawn profits (if there were any) became capital, then this holding would be harmless error. Supreme Court Rule 45.

The agreement, in paragraph 3, seems to contain a limitation on the amount which Taylor could draw quarterly. He was entitled to draw an amount "which is reasonable under the circumstances." Appellant would construe paragraph 3 to say that Taylor could draw quarterly, and at the annual accounting he would be entitled to draw any amount he had not previously drawn. That is certainly one interpretation of paragraph 3, but it is obvious that paragraph 3 is not nearly as specific as appellant would have us construe it, and we are unwilling to say the construction given the agreement by the register and confirmed by the court is clearly erroneous.

In view of the fact that the register heard the witnesses and had the opportunity to examine the documents at the same time the witnesses were testifying, we think we should apply the rule announced in Winter v. Banks, 72 Ala. 409 (1882), where the court said:

"* * * On appeal from a decree of the chancellor, overruling exceptions to the report of the register on questions and matters of account dependent upon the conclusions drawn by the register from evidence produced before him, all reasonable presumptions are indulged to support his rulings, and they will not be disturbed · unless shown to be clearly wrong * * *"

■ Appellee cross-assigned errors, but states in brief that she desires to insist only upon cross-assignment of error no. 2, which complains of the inclusion in the decree rendered against her of a $200 penalty as fixed by paragraph 8 of the register's report. But the appellee failed to file any exceptions to the register's report and cannot file an exception here for the first time. Selman v. Bryant, 261 Ala. 53, 72 So.2d 704 (1954). That case involved a

2. Following is testimony concerning the amounts drawn by Taylor:
   "COURT:
   Can it be agreed and stipulated that the figure of $3,667.68 was the correct draw for· Mr. Taylor for the year of '65?
   "MR. MACLEOD:
   Yes, sir, and in '64 the draw was $3,189.71."

suit in equity for an accounting. On appeal the court stated:

"The appellee in brief contends that * * * the register's computation erroneously included that interest. The appellee, however, failed to file an exception to that part of the register's report and no objection having been made in the trial court, it cannot for the first time be raised in this court."

Since the appellee did not raise this point by means of an exception to the register's report she cannot raise it for the first time on appeal.

The judgment of the trial court is therefore due to be affirmed.

Affirmed.

LAWSON, MERRILL, HARWOOD and BLOODWORTH, JJ., concur.