## IN THE MATTER OF PUBLISHING THE DOCKET IN A LOCAL NEWSPAPER.

**In Banc, March 28, 1913. Certified to Reporter for Publication July 16, 1915.**

**SUPREME COURT: Publication of Docket in Newspaper.** The publication of the docket of the Supreme Court or of any division thereof, in a local newspaper or any newspaper, at public expense, is not required by the statute. The amendment of the statute in 1889 (Sec. 2079, R. S. 1909) took away the necessity for such publication. It is, therefore, ordered that the clerk shall not hereafter cause the docket to be published in a newspaper at public expense.

FARIS, J.—Since the administrative order, made by a majority of the Court In Banc, touching the matter in the caption, may be said with historical truth, to

overrule a former holding of this court on this question, a decent respect for the diverse views entertained by other members of the court (and mayhap by the public likewise) requires a setting forth of the points which induced the conclusions reached.

At the threshold we are met by the question as to whether the language of the statute is clearly mandatory and requires that the docket of the Supreme Court be *"published in a newspaper,"* which newspaper is printed in Cole County. If the language does so require, we must needs acquiesce, and further comment is "weary, stale, flat and unprofitable." If the language to which we shall presently call attention be directory only, then we may exercise a sound discretion, influenced by an expediency which fits the means to the end. In thus asserting we bear in mind the certainly elastic and perhaps inherent power of the court to make rules inuring toward orderliness and expedition of business. The section under discussion is as follows:

"Sec. 2079. It shall be the duty of the judges of the Supreme Court and Courts of Appeals, at the end of each term of said courts, to direct the number of cases to be docketed by the clerks for the next succeeding terms of the courts, and the clerks shall docket all cases from the same judicial circuit in succession, in the order of the circuits, setting not more than ten cases for each day, and a copy of the docket shall be printed in the county wherein such Supreme Court and Courts of Appeals shall be held, at least forty days before the commencement of the term: *Provided,* that if for any cause any cases are not reached for hearing at the first term at which they are docketed, then it shall be the duty of the clerk to place all cases undisposed of at any term first upon the docket of the succeeding term; and *provided further*, that if any case has, or shall hereafter, come before any of said courts, by ap-

266Mo.4

peal or writ of error, and has been or shall be re- versed and remanded, and said case shall again come before any of said courts for further trial, it shall be the duty of the clerk of said court to docket said case for trial among the first cases for trial at the next term of the court, if it reaches the court in time, and if not it shall be docketed at the next term of such court, and it shall be the duty of the court to hear and deter- mine the case at the same term it is docketed, unless continued for cause.''

The only words of the above section which concern us, because they are the only words having any refer- ence to the matter in hand, are: *''A copy of the docket shall be printed in the county wherein such Supreme Court . . . is held.''* If we can read into this sec- tion by construction the additional requirement that such printing shall be ''in a newspaper published'' in the county wherein the Supreme Court is held, then such publication must be so had. We must give to the word ''print'' as used by the law-making power, its ordinary meaning, when used as a verb (and it so oc- curs in this statute), which is ''to make an impression with inked type.'' The word ''publish'' ordinarily means ''to make public.'' A book, a paper or a pam- phlet might be ''printed'' but never ''published.'' A paper might be ''printed'' in St. Louis and ''pub- lished'' in Chariton County. [E. g. *vide*, Julian v. Kan- sas City Star, 209 Mo. 35; Cook v. Globe Printing Co., 227 Mo. 471.] We hold, therefore, that upon its face the statutory language is not clearly mandatory in re- quiring publication of our docket to be made in any newspaper.

But we need not engage in such analytical split- ting of hairs. We need only consider the legislative his- tory of the governing words of the section, supra. The requirement as to the printing of the docket came into the statute by an act approved February 28, 1871 (Laws 1871, sec. 21, p. 48), and was couched in the fol-

lowing words: *"A copy of the docket shall be printed in some newspaper printed in the county wherein such Supreme Court shall be held."* The wisdom of this provision at that time is not difficult to see, when we bear in mind that there were then held six terms of court each year; that such terms were held in St. Louis, Jefferson City and St. Joseph. The March and October terms were held in St. Louis; the January and July terms at Jefferson City; the February and August terms at St. Joseph. The court was ambulatory; the mountain came to Mohammed. The court was carried to the bar.

By the Constitution of 1875 the place of sitting of the Supreme Court was permanently fixed at Jefferson City. So, as we might expect, the language under discussion was changed in 1877 to read thus: *"A copy of the docket shall be printed in the county wherein such Supreme Court shall be held at least ten days,"* etc. [Laws 1877, p. 232.]

The language used in the Act of 1877, supra, and last above quoted, was carried, without change, into the revision of 1879. [Sec. 3763, R. S. 1879.]

In 1883, the above section was amended to read: *"The clerk shall cause a copy of the docket to be printed in some newspaper published in the county wherein such Supreme Court shall be held, at least thirty-five days before the commencement of said term."* [Laws 1883, p. 123.]

The above language is clear and needs no comment. It will be noted also that the period of publication was "thirty-five" days, whereas before it had been but ten days.

In 1889 the entire Practice Act was revised and re-enacted. As re-enacted, the provision under discussion, being section 3763, Revised Statutes 1879, was changed to read as follows: *"And a copy of the docket shall be printed in the county wherein such Supreme Court and Courts of Appeals shall be held at*

*least forty days before the commencement of the term."* [Laws 1889, p. 208.] This language was carried from the revised and amended act, above quoted and cited, into the Revised Statutes of 1889, as section 2293, and this language has come down to us unchanged through the revisions of 1899 (Sec. 855, R. S. 1899), and 1909 (Sec. 2079, R. S. 1909), and now occurs in the section last cited, just as it was re-enacted in 1889.

From this it is clear that the Legislature eliminated the requirement as to publication in a newspaper, and that it did so with premeditation. This is clear from the fact that in the revised bill as set out in the Session Laws of 1889, the amendment of 1883 (requiring and directing publication in a newspaper), is referred to in the parenthetic footnote. Furthermore, the period of publication is changed from thirty-five days to forty days. It follows that the rules of statutory construction will not allow us to say that the Legislature did not intend to repeal the requirement of publication in a newspaper.

Another consideration, in its logic equally convincing and decisive, is the fact that by section 2079 is conferred the sole authority for this court, through its clerk, to print and distribute to the bar the bound pamphlet dockets. This being so, has this court, or the clerk of this court, under the provisions of section 2079, power *both* to *publish* the docket of this court in a newspaper printed in Cole County, and to *print* paper-bound pamphlet dockets for the benefit of and to be sent out to counsel over the State having causes set for trial in the court. Unless the power comes from this section we are then clearly lacking in any legal authority under the statute quoted, to either print in a pamphlet, or publish in a newspaper. We may do one, but not both. The authority specifically conferred (history of the legislative changes being kept in mind, and expediency and publicity considered), would then

seem to be to print in a pamphlet the docket of the court, and to *publish* such docket in every county and place where interested counsel reside.

The administrative rule heretofore adopted, since it entails upon the State an almost useless expense of some $800 a year, and requires to uphold it a construction of the statute which is wrong, ought to be followed no longer. Ordered therefore that the publication of the docket of this court be not hereafter published in any newspaper in Cole county. *Lamm, C. J.,* and *Brown* and *Walker, JJ.,* concur; *Woodson, J.,* dissents in opinion filed; *Graves, J.,* dissents in an opinion filed in which *Bond, J.,* concurs.

GRAVES, J.—I dissent from the opinion of my learned and esteemed brother in this matter. The question arose upon the business side of our duties. The particular occasion is immaterial. Whilst, as I have stated, and as stated by the principal opinion, the matter was one more particularly addressed to the business side of the court, and not especially to the judicial side, yet in determining our duties it became necessary to construe a statute of this State. Such construction bespeaks judicial action, and but for this my dissent to the order made would be a silent rather than a written dissent. By our order we have said that under section 2079, Revised Statutes 1909, the clerk has no right to have our docket published in a Cole County paper, or any other paper. The majority opinion of Judge FARIS so holds. To this order and this opinion I dissent.

I do not place this dissent upon the absolute necessity of such a publication, nor specially upon the advisability of the same, but I do place it upon what I deem a plain statutory duty. If the statute, set out in my brother's opinion, means that our clerk should publish our docket in a paper in the county where the court is held, then it should be done, because it is

mandatory in terms. And it should be done notwithstanding our view of the necessity of publication. That question was one for the Legislature and not for this court, and much might be said upon both sides of the question. With this view of our duties and the Legislature's duties, we shall not discuss the question of necessity.

As indicated by the principal opinion, for years we have had upon our books a statute somewhat similar in import. It is true that in the revision of 1889 the verbiage was changed and the meaning was clouded to a certain extent, and this cloud is the thing which now gives rise to the difference of opinion among the members of this court. To start with, we can safely agree that from 1889 to this date the statute has remained the same—a period of twenty-three years. During this period it has been construed by the officers upon whom the duty devolved to construe it. It has been construed (1) by the clerk of this court, (2) by this court as the auditor of its own bills, and (3) by the disbursing officers of the State. All have said the statute means the publication of the docket in some newspaper in Cole County, such as the clerk of the court may direct. The clerk has so construed it by making such publication. The court has at least tacitly construed it by auditing such bills, and the disbursing officers of the State have so construed it by auditing and paying such bills—and this for twenty-three years. Not only so, but once since I have had the honor of a presence upon this bench the matter was raised in the Court in Banc, and it was then held to mean a publication of the docket in a Cole County paper. No opinion was written, and this is a further reason for me now to speak. I am unwilling to now sit in silence, and in that way say that for twenty-three years we, as a court, have been paying bills without authority of law. Nor am I willing to say that the construction of the statute in question by the other officers of the State for these

years has been wrong. I concede that the interpretation of statutes given by officers who are called upon to interpret them does not bind the courts, but it is at least persuasive. Such officers are not always mistaken in their reading and understanding of the law.

But going to this act itself and giving to it our own construction, I cannot concur in the majority opinion. It is true that in revisions changes were made, but these must be considered in the light of the circumstances surrounding. This is a cardinal principle of statutory construction. That at one time the statute clearly provided for publication, but in a revision thereof used clouded language, does not of necessity indicate a purpose of changing the effect of the statute. Because the Legislature used the more explicit word of "publication" in the previous act, and the less explicit word of "printed" in the ofttimes hurriedly drawn revision bill, does not, of itself, necessarily bespeak a change of legislative intent. Before the revision of 1889 the legislative intent was expressed in plain terms. That revision is not so definite and plain, but to my mind there is no such radical change in language as to indicate a change of legislative intent. So after all it strikes me that we are forced to consider the effect of the language used in section 2079, supra, with the usual lights, furnished by the law, for statutory construction. The language of the statute now in dispute, is "and a copy of the docket shall be printed in the county wherein such Supreme Court . . . shall be held." As has been said, this clause for twenty-three years has been construed to mean the publication of our docket in some newspaper in Cole County, because during that time the court has had a permanent abode here. I think the whole trouble arose by the unfortunate use of the word "printed" in the revision of 1889, instead of the word "published." Had the statute used the word "published" the term "in a newspaper," would necessarily follow, because in this

usage of the word such would be the natural meaning of the word. The word "printed" has a varied meaning according to the connection in which it is used. If we are referring to an imprint upon calico rags it has a fixed meaning. If we refer to an imprint upon a stone it has a fixed meaning. So I might go through a long list—*vide* Century Dictionary, Vol. 4, pp. 4731-2, under the verb "Print." But if we go to the word "print" used as a noun on the latter page of the citation we find this:

"4. A printed publication, more especially a newspaper or other periodical.

"What I have known

Shall be as public as a print.—Beau. anf Fl., Philaster, ii. 4.

"The prints, about three days after, were filled with the same terms.—Addison." There is at least some relation between the verb and the noun, and the definition of the.one sheds some light upon the definition of the other. But after all we know that the word "print" has a varied meaning, and its meaning in a particular law must of necessity depend upon the context of the whole act. So after all the real question is, what is the meaning of the word "printed" in this law. From time almost out of memory this court has had three "printed" forms of the docket, i. e. (1) a large size substantially-bound book for the use of the judges of the court; (2) a pamphlet or paper covering (in a more diminutive form) which the clerk mails to counsel upon both sides of the cases printed in the particular docket; and (3) a publication of the same docket form in a newspaper where the court was held. These were existing conditions when the present law was passed. Now it can hardly be said that the law refers to the printed docket prepared for the use of the individual members of the court, because there would be no sense in compelling that to be printed for forty days prior to the beginning of the term. The judges only need

this form of the printed docket when the court begins, and not sooner. Nor can it be reasonably said that it refers to the little pamphlet form of the docket mailed by the clerk to the lawyers. If the Legislature had in mind that kind of a "printing" it would not only have directed the printing, but likewise directed the publication, by saying that the docket when thus "printed" should be mailed to the parties to the suit. The fact that the law makes no provisions or requirement for the mailing out of these pamphlet dockets is conclusive that this kind of printing was not in the legislative mind. We have never had but the three forms as indicated above. If the law does not refer to our private docket, or to those pamphlet dockets, what form of printing could it refer to other than a publication in a newspaper. We repeat that it is unreasonable to say that the Legislature had reference to the pamphlet docket, because if so they would not only have directed the printing, but likewise the distribution by mail. Think for a moment of a legislative body directing the printing of a lot of dockets without any direction for their distribution. The only reasonable conclusion is that in the revision of 1889 they unfortunately used the word "printed" instead of the word "published," but meaning all the time a publication of our docket in a local newspaper.

Section 10340, Revised Statutes 1909, is one of the sources of our power to audit and pay each and all of the three classes of bills which we have heretofore audited and paid. If additional authority is sought it can be found in chapter 23, pertaining to "Clerks of Courts of Record." In the circuits of this State we find the clerks of the court furnishing the court with a docket such as we have here. We also find him furnishing the bar with pamphlet form of the same just as we have here. His authority so to do is under this chapter pertaining to "Clerks of Courts of Records." This court happens to fall within the class and there-

fore our clerk falls within the class. What is there paid for by the county is here paid for by the State as provided for by section 10340, supra. This disposes of two printed forms of our docket, and leaves only the publication of the docket as the only reasonable intent of the Legislature in formulating section 2079, supra. The act may be improvident. The necessity for the publication may not exist, but these matters should be addressed to the Legislature and not the court. My conviction is that the word "printed" as used in section 2079, supra, was intended by the Legislature to mean a publication in a newspaper in Cole County, the place where the court is held. There could be no reason for requiring the other class of printing to be done here. Our individual dockets, as well as the pamphlet form thereof, have to be printed, under the law, by the public printer and he may or may not have that part of his business domiciled here.

To conclude I am unwilling to say that this court and the other public officials who were called upon to construe this act for the past twenty-three years have been in error, and have for this length of time audited and paid out $800 per annum without authority of law. The amount above paid is from my brother's investigations, rather than my own. I think the reasonable construction of this section 2079 justifies the construction heretofore given, and I therefore dissent to the able and exhaustive opinion of my brother. Legislative intent is the overshadowing question in the construction of statutes, and I can't conceive why a Legislature would direct the printing of our docket, except on the ground that by such printing it was to be made public. If it was the legislative intent to make it public in anyway, then if they had ordered a printing they would have suggested some means of making that printing public. I therefore desire to be recorded as dissenting from the majority opinion, as well as the unauthorized order which we have made. The author-

ity of the order could well be questioned upon grounds other than the opinion or the dissenting opinion, but these should be held subservient to the more vital question of the meaning of the statute. *Bond, J.,* concurs; *Woodson, J.,* concurs in separate opinion.

WOODSON, J.—While I have not had the time or opportunity to investigate the statutes governing this question and reviewed by my learned associate Judge FARIS, nevertheless, almost as far back as I can remember, the docket of this court, under the supervision and control of this court, has been published in a newspaper printed in Cole County; and when I stop to consider the score or more of able jurists who have occupied this bench during that time, it causes me to hesitate, and ask the question, are we right, and were they wrong, or were they right and we wrong?

For myself, I am going to follow the footprints of the fathers, and, therefore, concur with all that has been said upon this subject by my associate Judge GRAVES, in his dissenting opinion.

PER CURIAM.—The court is of opinion that the publication of the docket in a local newspaper or any newspaper at public expense is not required by statute; that the amendment to the statutes, pointed out in the opinion of FARIS, J., herewith filed, have, when properly construed, taken away the necessity for such publication. It is therefore ordered that hereafter the clerk shall not cause to be published in a newspaper at public expense the docket of this court, to-wit, the list of cases set down for hearing in Banc or in Division at any term or call of this court.

*Graves, J.,* dissents in an opinion filed, in which *Bond, J.,* concurs, and in which *Woodson, J.,* concurs in a separate opinion.