# UNITED STATES v. BALTIMORE POST CO.

(District Court, D. Maryland. December 16, 1924.)

**1. Statutes ⬅⟶206—In construing, every word should be given effect and several parts reconciled.**

In construction of statute, effect should be given to every word, and several parts should be reconciled and full effect given to each.

**2. Statutes ⬅⟶183—Intent of Legislature is controlling as against letter of statute.**

Intent of lawmaking body should prevail even against letter of statute, and if a literal interpretation operates unjustly or leads to absurd results, or contrary to evident meaning of act as whole, it should be rejected.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Publish.]

**3. Words and phrases—"Publish."**

To "publish" means to make public, to make known to people in general, and is not synonymous with "communicate," "make known," "divulge."

**4. Internal revenue ⬅⟶2—Congress may determine extent of publicity to be given income tax returns.**

It is within power of Congress in settling policy of taxation laws to determine how much or how little publicity shall be given income tax returns.

**5. Internal revenue ⬅⟶39, 40—Newspaper's publication of income tax returns from commissioner's list is not violation of statute.**

Publication by a newspaper of so much of income tax returns as are contained in lists prepared and made available for public inspection by Commissioner pursuant to Revenue Act June 2, 1924, § 257 (b), is not a violation of Rev. St. § 3167 (Comp. St. § 5887), as re-enacted by Revenue Act June 2, 1924, § 1018, declaring it unlawful to print or "publish in any manner whatever not provided by law, any income return or part thereof."

The Baltimore Post Company was indicted for violation of statute prohibiting publication of any income tax return or part thereof. On demurrer to indictment. Demurrer sustained.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., and Sewall Key and Harold Allen, Sp. Asst. Attys. Gen., for the United States.

Haman, Cook, Chesnut & Markell, of Baltimore, Md., and Newton D. Baker, of Cleveland, Ohio, for defendant.

SOPER, District Judge. The Baltimore Post Company is indicted for violation of Revised Statutes, § 3167 (Comp. St. § 5887), as re-enacted by section 1018 of the Revenue Act of June 2, 1924 (43 Stat. 253 and 254).

The indictment is in five similar counts. The first count charges that on March 15, 1924, the income return of one J. Cookman Boyd was made to the collector of internal revenue at Baltimore, showing, among oth-

er things, the amount of the tax due to the United States for the year 1923 to be $150.-65; that the Commissioner of Internal Revenue determined that said sum was the amount of the tax, and that it was paid to the collector by the said Boyd; that afterwards on October 24, 1924, a list of income tax payers in the collection district of Maryland, containing the name of the said Boyd and showing the amount of the income tax paid by him, was prepared and made available to inspection in the collector's office at Baltimore in the manner determined by the Commissioner, and that the defendant, on October 24, 1924, at Baltimore, unlawfully and in a manner not provided by law, did print and publish in its newspaper a part of the income return, to wit, the part showing the name of the said Boyd and the amount of his income tax.

The defendant demurs to the indictment on three grounds:

(1) That the matter published by the defendant was no part of the income return, but merely a copy of the list prepared and made available to public inspection by the Commissioner.

(2) That it is the duty of the Commissioner, under the provisions of section 257 (b) of the Revenue Act of 1924, to prepare and make available for public inspection, in each collection district, lists containing the name of each person making an income tax return and the amount of tax paid by him, and therefore the publication made by the defendant was not a printing or publishing of a part of an income return in a manner not provided by law in violation of Rev. St. § 3167.

(3) That if Rev. St. § 3167, interpreted in connection with section 257, forbids the printing in a newspaper of the name of the taxpayer and the amount of tax paid, contained in the lists open to public inspection, then to that extent section 3167 is unconstitutional, since it abridges the freedom of the press protected by the first amendment to the Constitution of the United States.

Since I have reached the conclusion that Congress did not intend to penalize the publication of the Commissioner's list by the press, the discussion will be limited to the second ground of the demurrer.

Section 3167 makes it an offense to print or publish returns only when the act is done "in any manner whatever not provided by law," and it is therefore necessary to inquire in what manner the printing or publishing of returns may lawfully be made. In this respect section 257 becomes pertinent. It provides that returns upon which

the tax has been determined by the Commissioner shall constitute public records open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary of the Treasury and approved by the President.

There are, however, a number of exceptions or provisos by which the returns are made available for inspection to certain persons irrespective of the order of the President and the rules and regulations of the Secretary:

(1) Certain congressional committees have the right to call for and inspect the returns, and relevant or useful information thus obtained may be submitted by the committees to their respective Houses.

(2) State officers, upon the request of the Governor, are entitled to access to corporation returns at such times and in such manner as the Secretary may prescribe.

(3) Bona fide shareholders, owning 1 per cent. or more of the outstanding stock of any corporation, may examine the returns of the corporation.

(4) Finally, and most important for the purposes of this case, is subsection (b) of section 257, which is enacted in its present form for the first time in the Revenue Act of 1924. It is as follows:

"The Commissioner shall as soon as practicable in each year cause to be prepared and made available to public inspection in such manner as he may determine, in the office of the collector in each internal revenue district and in such other places as he may determine, lists containing the name and the post office address of each person making an income tax return in such district, together with the amount of the income tax paid by such person."

Obviously, none of the transactions authorized or directed by section 257 constitutes a violation of section 3167. They are expressly legalized by the terms of the act. The significance of these exceptions from the prohibition against publicity becomes the more apparent when the history of federal income tax legislation, and particularly of the two sections under discussion, is considered. See the opinion of Justice Hoehling of the Supreme Court of the District of Columbia in the case of Hubbard v. Blair, filed December 3, 1924.

Section 3167 was first enacted in its present form by the Income Tax Act of 1894 (28 St. 509), held unconstitutional in the case of Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 S. Ct. 912, 39 L. Ed. 1108. Then followed the Income Tax Law of 1913 (38 St. 114), wherein section 3167

was again re-enacted, and the same section has been repeated in the successive Revenue Acts of 1916 (Comp. St. § 5887), 1919 (Comp. St. Ann. Supp. 1919, § 5887), 1921 (Comp. St. Ann. Supp. 1923, § 5887), and finally in the Revenue Act of 1924.

The policy of Congress until 1919 was to keep secret the returns, if we may except a brief period under the first Income Tax Law of 1861, and a like period during which, under the Corporation Tax Law of August 5, 1909 (36 Stat. 11), it was provided that corporation returns should constitute public records and be open to public inspection as such. This latter provision was withdrawn by the act of June 17, 1910, ch. 297, 36 Stat. 494. With these exceptions, the prohibition against publicity of returns has been absolute.

By the act of 1919, a change of policy was introduced. Section 257 was enacted in its present form, except in two particulars. There was no provision for inspection of returns by congressional committees, and the lists to be prepared and made available by the Commissioner for public inspection in the office of the collector in each district, and in such other places as he might determine, contained only the names and addresses of persons making income tax returns, but not the amounts of taxes paid. This section continued, without modification, in the act of 1921, and finally by the act of 1924 was enlarged so as to provide for the obtaining of information by committees of Congress, and by providing that the lists prepared and posted should contain not only the name of the taxpayer, but the amount of the tax paid by each person.

It therefore appears that while section 3167 has remained the same since the Income Tax Law of 1894 until the present time, it has never forbidden the lawful divulging of information or publication of returns, and that in the meantime, beginning with the act of 1919, and ending with the act of 1924, the kinds of lawful publication have been amended and enlarged, reaching their greatest breadth in the act upon which the indictment is based.

The precise question, then, to be decided, is whether the direction in section 257 (b), for the Commissioner to make available for public inspection the names of the taxpayers and the amount of the taxes paid is broad enough to permit the printing and publishing by the press of the information so disclosed. The two phrases of the law, to be considered in connection with each other, in their exact verbiage, are as follows:

Section 257 (b): "The Commissioner shall * * * cause to be prepared and made available to public inspection in such manner as he may determine, in the office of the collector in each internal revenue district and in such other places as he may determine, lists containing the name and the post office address of each person making an income tax return in such district, together with the amount of the income tax paid by such person."

And R. S. § 3167, which in this respect provides:

"It shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return or any part thereof."

[1, 2] A comparison of these sections (set out in full at the end of the opinion) at once suggests an inconsistency in their terms, or if they be narrowly construed and distinguished, a confusion of underlying purpose or intention, and the query arises as to the reason for a positive mandate in one part of the act to throw open to every one significant parts of the returns, coupled with an explicit prohibition in another section forbidding the use of the most familiar and efficient means of publicity. The rules of statutory construction are of little assistance. While it is well settled that in the construction of a statute effect should be given to every word, no part should perish by construction, but the several parts should be reconciled and full effect given to each (Washington Market Co. v. Hoffman, 101 U. S. 115, 25 L. Ed. 782; U. S. v. Stowell, 133 U. S. 1, 10 S. Ct. 244, 33 L. Ed. 555; Merritt v. Welsh, 104 U. S. 694, 26 L. Ed. 896); yet, on the other hand, there is equal authority for the proposition that the intention of the lawmaking body should prevail even against the letter of the statute, and if a literal interpretation of every part of a statute operate unjustly, or lead to absurd results, or be contrary to the evident meaning of the act taken as a whole, it should be rejected (Hawaii v. Mankichi, 190 U. S. 212, 23 S. Ct. 787, 47 L. Ed. 1016).

The difficulty is to select the rule governing the case. Once that is done, the case is decided. We are remitted to the words of the act. The government contends that to print or publish in this connection is to print and distribute by newspapers, books, or pamphlets. Oral communication of information obtained from the published list is not forbidden. Thus the prosecution escapes from the dilemma proposed by the defendant, who would give to the word "publish" the same significance as "com-

municate" in order to inquire whether Congress could have intended to give to every person who might desire it exact information of the amount of taxes paid by his neighbors, and yet to punish him if he should discuss the interesting news.

[3] To "publish" is to make public; to make known to people in general. In the statute, it does not cover the private communication by one person to another. It is not synonymous with "communicate," as it may be in the law of libel or slander. Other provisions of the law make this clear. Section 257 (a) forbids any shareholder, who has lawfully examined a corporation's return, to make known any particular thereof. Section 3167 prohibits any officer or employee of the United States from divulging or making known to any person any particular of any income return; but the clause of section 3167, upon which the indictment is founded, makes it an offense for any person to print or publish any part of any income return. Evidently "to publish" has not here the same meaning as "to make known" or "to divulge."

[4] The question remains whether the right of public inspection of a part of the return includes the right to print or publish. "Public inspection" is an inspection open to all the people. But one may acquire information and yet have no right to publish it, as in the case of privileged communications, or copyrighted documents, or, under certain circumstances, public records such as land records. Buck v. Collins, 51 Ga. 391, 21 Am. Rep. 236; Belt v. Prince George's County Abstract Co., 73 Md. 289, 20 A. 982, 10 L. R. A. 212. A distinction between "inspection" and "publication" exists. Doubtless Congress may determine (except in so far as it may be restrained by constitutional prohibition), in settling the policy of the laws of taxation, how much or how little publicity of income returns shall be given. Flint v. Stone Tracey Stone Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. The prosecution contends that under the act of 1924 public inspection only is accorded, while printing or publishing is still a crime.

If the literal meaning of the words is adopted, this contention is sound, but will it stand the test of common sense? Is it in harmony with the general purpose of the statute? Congress took a long step toward general publicity of income tax returns in the act of 1924. Theretofore, although public records, they were open to inspection only upon presidential order, excepting only the cases of state officers and stockholders

of corporations under certain conditions. In 1924, certain congressional committees were authorized to call on the Secretary of the Treasury and to secure "any data of any character contained in or shown by the returns, or any of them, that may be required," and "to inspect all or any of the returns at such times, and in such manner," as they may determine, and to submit any relevant or useful information thus obtained to the Senate or the House, as the case may be. Such provisions were calculated to lead to the publication by the press of information so obtained.

More important and significant was the amendment of section 257 (b), whereby public inspection was granted to every one so far as names and amounts were concerned. The privilege was not limited to those who had a personal or property interest to protect. It was accorded to all, without reason and without fee. Nor was it limited to those who might come to the office of the collector to satisfy a legitimate interest or an idle curiosity. In the discretion of the Commissioner, the lists might be made available to public inspection "in such other places" as he might determine, conceivably in places so numerous and so public as to bring the information to the attention of a very large number of the people. What reason could the Legislature have had to empower an official to advertise widely that which it would be a criminal offense for a citizen to distribute in pamphlet form?

[5] The purpose of the amendments and additions to section 257 by the act of 1924 is plain. Congress determined to abandon the policy of secreting the amount of taxes paid from the general public. It was doubtless thought that thereby the chances of fraud, of favoritism, of improper concealment of income might be reduced. Every citizen informed as to the amount of taxes paid by his fellows would become a possible source of information to the government. The taxpayers and the officials would be the more likely to do their full duties. No other explanation satisfactorily accounts for the changes in the law. Bearing this in mind, one perceives that it is counter to the very spirit of the law to punish those who, by added publicity, materially assist to accomplish the very object which Congress had in view. To give consistency and clearness to the statute, it is necessary to hold that Congress had no intention to apply the penalties against printing and publishing to so much of the returns as should be given out on the Commissioner's lists. As to other

parts of the returns, the prohibition remains in effect.

The demurrer to the indictment will be sustained.

The statutes hereinbefore referred to are as follows:

### "Returns to be Public Records.

"Sec. 257. (a) Returns upon which the tax has been determined by the Commissioner shall constitute public records; but they shall be open to inspection only upon order of the President and under rules and regulations prescribed by the Secretary and approved by the President: Provided, that the Committee on Ways and Means of the House of Representatives, the Committee on Finance of the Senate, or a special committee of the Senate or House, shall have the right to call on the Secretary of the Treasury for, and it shall be his duty to furnish, any data of any character contained in or shown by the returns or any of them, that may be required by the committee; and any such committee shall have the right, acting directly as a committee, or by and through such examiners or agents as it may designate or appoint, to inspect all or any of the returns at such times and in such manner as it may determine; and any relevant or useful information thus obtained may be submitted by the committee obtaining it to the Senate or the House, or to both the Senate and House, as the case may be: Provided further, that the proper officers of any state may, upon the request of the governor thereof, have access to the returns of any corporation, or to an abstract thereof showing the name and income of the corporation, at such times and in such manner as the Secretary may prescribe: Provided further, that all bona fide shareholders of record owning 1 per centum or more of the outstanding stock of any corporation shall, upon making request of the Commissioner, be allowed to examine the annual income returns of such corporation and of its subsidiaries. · Any shareholder who pursuant to the provisions of this section is allowed to examine the return of any corporation, and who makes known in any manner whatever not provided by law the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any such return, shall be guilty of a misdemeanor and be punished by a fine not exceeding $1,000 or by imprisonment not exceeding one year, or both.

"(b) The Commissioner shall as soon as practicable in each year cause to be prepared and made available to public inspection in such manner as he may determine, in the office of the collector in each internal revenue district and in such other places as he may determine, lists containing the name and the post office address of each person making an income-tax return in such district, together with the amount of the income tax paid by such person."

"Sec. 3167. It shall be unlawful for any collector, deputy collector, agent, clerk, or other officer or employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the operations, style of work, or apparatus of any manufacturer or producer visited by him in the discharge of his official duties, or the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; and it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return or any part thereof or source of income profits, losses, or expenditures appearing in any income return; and any offense against the foregoing provision shall be a misdemeanor and be punished by a fine not exceeding $1,000 or by imprisonment not exceeding one year, or both, at the discretion of the court; and if the offender be an officer or employee of the United States he shall be dismissed from office or discharged from employment."