THE CITY OF PLAINFIELD, PLAINTIFF, v. THE COURIER-NEWS & THE DAILY JOURNAL, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided April 5, 1974.

*Mr. Edward W. Beglin* for plaintiff (*Messrs. Crane, Beglin & Vastola,* P. A. attorneys).

*Mr. Lawrence Schechterman* for defendant *The Courier-News.*

*Mr. Matthew D. W. Wade* for defendant *The Daily Journal* (*Mr. Richard R. O'Connor,* attorney).

McGRATH, J. C. C. This matter comes before the court on a complaint for a declaratory judgment. Plaintiff, a municipal corporation, seeks a determination whether defendant, *The Courier-News,* is qualified and eligible to be designated as its official newspaper and qualified for the publication of all of its municipal ordinances, resolutions, public notices and official advertisements. Plaintiff further seeks a determination that if *The Courier-News* is not so qualified and eligible, whether defendant, *The Daily Journal* is so qualified and eligible. The action is brought under *N. J. S. A.* 2A:16–50 *et seq.*

*The Courier-News* was established as a newspaper in Plainfield in 1884 as the Evening News. Its name was changed slightly several times but in 1961 it became *The Courier-News.* It maintained its entire plant in a two-story building owned by it on Church Street in Plainfield. In March 1972, however, the main office, printing presses and general equipment were moved from the Church Street location to a new facility in Bridgewater Township in the adjoining County of Somerset. It should be pointed out that the City of Plainfield is in the unique position of being in the southwest corner of Union County adjacent to the counties of Middlesex and Somerset.

The building on Church Street was subsequently sold and the entire first floor, an area 25' x 40', was leased back to *The Courier-News* as offices for clerical people, several reporters, advertising salesmen and advertising dispatchers. Specifically, there are three reporters in the Plainfield office.

One reporter is a general news reporter, one handles police matters in Plainfield and surrounding communities, and one handles city government news. Additionally, there are three people engaged in advertising sales; one handles retail advertising in the eastern portion of Plainfield and towns east of Plainfield such as Scotch Plains, Fanwood, Westfield, etc., one handles banks and larger stores in the Plainfield area, and one handles ads for the district including South Plainfield. The Plainfield office also has a full-time office clerk who handles clerical work and receives people who visit the office. Her duties include the handling of classified ads and receipt of payments for same. This office includes several advertising dispatchers. They are termed "pick up kids." One such person works afternoons and gathers ad material from the merchants and gives these items to another person from the same department. He then delivers it to the main plant where other such material is "picked up" for delivery back to the merchants.

Aside from these persons, all of the other personnel of the newspaper are located at the new plant in Bridgewater, except that there is an office in Elizabeth which has one employee, an office in Flemington which has three employees, an office in Basking Ridge which has three employees, and an office in New Brunswick which has one employee. All of the other persons employed, totalling 232 in number, work in the new plant in Bridgewater.

The proofs for *The Courier-News* established that circulation in Plainfield approximate 8800 daily copies, and according to the undisputed testimony of John J. Curley, who, until recently, was its editor, publisher and president, the *Courier* "puts papers into circulation there (Plainfield) first each day." Prior to the move of the plant facilities to Somerset County in March 1972, the newspaper was entered as second-class mail matter with the postoffice in Plainfield, and, after the move was made, it was entered as second-class mail matter in Somerville, the Plainfield postal entry being discontinued at that time. The paper is cir-

culated in Union, Hunterdon, Morris, Warren, Middlesex and Somerset Counties.

The circulation manager and the advertising manager have their offices in the Bridgewater plant. The books and records pertaining to advertising and classified advertisements are kept in Bridgewater. The city editor and his staff handle the review of the news in Bridgewater and nothing is printed without review for editing by the Bridgewater personnel. All composing for advertising is accomplished in the Bridgewater office, as is the composing room for news. There are some 16 trucks owned by the company, garaged and operated out of the Bridgewater delivery room, which is apparently the only delivery room. The total newspapers printed each day approximate 62,000 to 63,000 (One-seventh of its newspapers, therefore, are distributed in the Plainfield area.) The masthead of the *Courier* states that it is entered as second-class matter in Somerville and that the address of the newspaper is Box #3600, Somerville, New Jersey. In the 1973 Plainfield telephone book, the address of the Courier is given as Somerville, New Jersey. The telephone number in the classified section of the paper is a Fanwood exchange however, apparently because it services the Union County municipalities of Plainfield, Scotch Plains, Fanwood, Westfield and Summit as toll-free calls.

The Daily Journal, formerly known as the *Elizabeth Daily Journal,* circulated very few newspapers in Plainfield or even canvassed the advertisers to any extent prior to the time that the *Courier* moved its plant to Bridgewater. It was about the time that it generally became known that the *Courier* was going to move, that the *Journal* became interested in extending its circulation into the western part of the County, particularly Plainfield. Since its extended program began, the *Journal* has increased its daily circulation to approximately 1100. In 1971 its daily circulation in Plainfield was about 12 copies a day.

*The Daily Journal* has maintained its main plant with all of its principal offices and printing presses in Elizabeth

since 1879, with its official office shown in its masthead as Elizabeth. It was entered as second-class matter at the postoffice in Elizabeth in 1879. Elizabeth and Plainfield are both in Union County.

The *Courier* has been publishing legal advertising for the City of Plainfield for years. On January 1, 1974 the City Council of Plainfield adopted a resolution again designating *The Courier-News,* "a newspaper published and circulating in the City of Plainfield" * * * "as the official newspaper of the City of Plainfield for the publication of all advertisements and notices required by law to be published by the City of Plainfield." Apparently someone raised a question as to the legality of such a resolution and the future publication of ordinances, official advertising and the like in the *Courier.* The municipality therefore instituted the present action.

*N. J. S. A.* 35:1–1 provides that "official advertising" and "official advertisements" includes all matters required by law to be published. On the question of newspapers qualified as legal newspaper, *N. J. S. A.* 35:1–2 provides:

* * * all newspapers printed and published in the English language within the state at least once a week for at least one year continuously shall be deemed legal newspapers for the publication of official advertisements. Any court or county officer may publish official advertisements in any Sunday newspaper published in the county for the period of at least one year and such publication shall be valid in all respects.

Further qualifications for publications by counties, municipalities, individuals and corporations and the qualifications of a newspaper acquiring a qualified newspaper are found in *N. J. S. A.* 35:1–2.2, which provides in pertinent part as follows:

Whenever, by law, it is required that there be published by printing and publishing in a newspaper or newspapers ordinances, resolutions or notices or advertisements of any sort, kind or character by any county, city or other municipality or municipal corporation, or by any municipal board or official board, or body, or office, or officials,

or by any person or corporation, such newspaper or newspapers must, in addition to any other qualification now required by law, meet the following qualifications, namely: said newspaper or newspapers shall be entirely printed in the English language, shall be printed and published within the State of New Jersey, shall be a newspaper of general paid circulation possessing an average news content of not less than 35%, shall have been published continuously in the municipality where its publication office is situate for not less than 2 years and shall have been entered for 2 years as second-class mail matter under the postal laws and regulations of the United States

*N. J. S. A.* 40:49–2 provides in pertinent part as follows:

\* \* \* (a) Every ordinance after being introduced and having passed a first reading, which first reading may be by title, shall be published at least once in a newspaper published and circulated in the municipality, if there be one, and if not, in a newspaper printed in the county and circulating in the municipality, together with a notice of the introduction thereof and the time and place when and where it will be further considered for final passage.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

\* \* \* (d) Upon passage, every ordinance, or the title, together with a notice of the date of passage or approval, or both, shall be published at least once in a newspaper circulating in the municipality, if there be one, and if not, in a newspaper printed in the county and circulating in the municipality. No other notice or procedure with respect to the introduction or passage of any ordinance shall be required.

*N. J. S. A.* 40A:2–19 provides:

\* \* \* Publications required by this chapter shall, in the case of a municipality, be in a newspaper published and circulating in the municipality, if there be one, and if not, in a newspaper published in the county and circulating in the municipality. In the case of a county, publications shall be in a newspaper published at the county seat, if there be one, and if not, in a newspaper published and circulating in the county and having a substantial circulation therein. For the purposes of this section, a newspaper shall not be deemed to be published during any period of time in which the publication of such newspaper shall be interrupted by any involuntary suspension of publication resulting from loss, destruction, mechanical or electric failure of typesetting equipment or printing presses or the unavailability due to conditions beyond the control of the publisher, of paper or other materials and supplies necessary for operation, or resulting from a labor dispute with a recognized labor union.

*N. J. S. A.* 40A:11–23 provides:

All advertisements for bids shall be published at least once, 10 days prior to the date fixed for receiving the bids, in a newspaper of general circulation published in this State and circulating within the territory included within or served by the contracting unit. The advertisement shall designate the manner of submitting and the method of receiving the bids and the time and place at which the bids will be received. If the published specifications provide for receipt of bids by mail, those bids which are mailed to the contracting unit shall be sealed and shall only be opened for examination at such time and place as all bids received are unsealed and announced. At such time and place the contracting agent of the contracting unit shall publicly receive the bids, and thereupon immediately proceed to unseal them and publicly announce the contents, which announcement shall be made in the presence of any parties bidding or their agents, who are then and there present, and shall also make proper record of the prices and terms, upon the minutes of the governing body, if the award is to be made by the governing body of the contracting unit, or in a book kept for that purpose, if the award is to be made by other than the governing body, and in such latter case it shall be reported to the governing body of the contracting unit for its action thereon, when such action thereon is required. No bids shall be received after the time designated in the advertisement.

*N. J. S. A.* 40:53–1 provides:

*Official newspaper designated*
The governing body of every municipality may designate an official newspaper or newspapers for the publication of all advertisements and notices required by law to be published by the municipality.

*N. J. S. A.* 40:53–2 provides:

All ordinances or other public notices which any municipality, except cities, may be required by law to publish, where the manner of publication is not otherwise specifically provided for, shall be published in at least one newspaper published and circulating in the municipality, and if there be no such newspaper, then in at least one newspaper published in the county in which the municipality is located and circulating in the municipality.

The question concerning the continued eligibility of *The Courier-News* stems from the removal of its main offices, printing presses and general equipment from Plainfield in

Union County to Bridgewater in Somerset County. All parties agree that a newspaper must first meet the requirements of *N. J. S. A.* 35:1–2.2 in order to qualify for the designation by the municipality as the official newspaper of the City of Plainfield for the publication of all advertisements and notices required by law to be published by the city. All parties further agree that both *The Courier-News* and *The Daily Journal* satisfy all prerequisites save the following, namely, that such newspaper:

\* \* \* shall have been published continuously in the municipality where its publication office is situate for not less than 2 years and shall have been entered for 2 years as second-class mail matter under the postal laws and regulations of the United States. [*N. J. S. A.* 35:1–2.2]

While *The Courier-News* was not in its Bridgewater plant for two years at the time this action was commenced, that point is now moot since the two-year statutory period is satisfied at this time. It can be seen that *N. J. S. A.* 35:1–2.2 only requires that the newspaper be published where its publication office has been for two years which would then bring the paper within the above statute. Furthermore, *N. J. S. A.* 35:1–2.2 was amended by the adoption of *L.* 1973, *c.* 332, to read as follows:

In the event any newspaper which shall have been qualified to publish legal advertisements shall move its publication office to any municipality in the same county *or in an adjacent county in this State* and which shall otherwise continue to meet the qualifications of this section, it shall continue to be qualified to publish legal advertisements which it was qualified to publish prior to moving said publication office for a period of 2 years after the date of the moving of its publication office. [Emphasis supplied]

By reviewing the legislative history of the above recent amendment, supplied by the New Jersey Law and Legislative Reference Bureau, it can be seen that a 1971 enactment was returned to the Senate by the Governor with certain objections and recommendations, which then became em-

bodied first in Senate Bill 2144 in 1971 and then in Senate Bill 419 in 1972. The latter was subsequently enacted and has become law.

The above amendment does not resolve all of the issues in this case since it merely provides a two-year "grace period," or hiatus, to a newspaper which moves its publication office to another municipality, *be that municipality in the same or adjacent county*. It is indeed more significant to observe and remember the Governor's comments in his message returning the bill to the Senate. Pertinent portions of the Governor's message, dated November 15, 1971, are as follows:

[T]he most important qualifications for a newspaper should be area of circulation as opposed to the physical location of its publication office. It would appear to me to be completely reasonable to allow a newspaper otherwise eligible to publish legal advertisements to continue so doing irrespective of the location of its publication office if the area of circulation remains the same.

Senate Bill 419, subsequently passed, contains the exact language as recommended by the Governor. The principal concern, therefore, behind the publication provisions in the statutes is that maximum notice be given to the affected community when its governing body or other boards or agencies are about to take governmental action directly affecting its inhabitants. Accordingly, not only should there be wide and prompt dissemination of official matter to the residents of a municipality, but, in addition, the publication containing this material should be one which the residents, or parties in interest, looks to for local news and such official matter. For example, the purpose of requiring publication prior to the adoption of an ordinance is "to afford opportunity to the parties in interest and citizens to be heard on the subject matter." *Reisdorf v. Mountainside Mayor and Council*, 114 *N. J. Super.* 562, 573 (Law Div. 1971); *Masnick v. Cedar Grove Mayor and Council*, 99 *N. J. Super.* 436, 439 (Law Div. 1968); *Bruno v. Shrewsbury*, 2 *N. J. Super.* 550, 554 (Law Div. 1949).

There is no doubt that *The Courier-News* best fits the above criteria for qualification as the newspaper to publish legal notices. It distributes one-seventh, or more than 8800, of its daily newspapers in the Plainfield area; the paper has been located in Plainfield proper from 1884 to March 1972 and was the official paper of Plainfield for most of these years. The *Courier* currently maintains a substantial office containing reporters, advertising salesmen, clerks and dispatchers, all of whom are dedicated to news and advertising in Plainfield and its surrounding communities in the area; and the *Courier,* after moving its printing plant to the Bridgewater location, which is approximately nine miles from Plainfield center, indeed continues to put papers into circulation in Plainfield first each day.

A further purpose in the statutory scheme for choosing official publications for municipalities is that of seeking to limit legal advertising to those newspapers having stability and continuity of existence in the municipalities where their publication offices are maintained. *In re Bonding Printing Co., Inc.,* 135 *N. J. L.* 478, 480 (E. & A. 1947). Under the facts of the present case, this court finds that the *Courier* fits within the intent of *N. J. S. A.* 35:1–2.1 and *N. J. S. A.* 35:1–2–2, as amended. The Legislature apparently envisioned the problem we are now faced with in this case and provided for the situation by specifying a "grace period" for newspapers that move their printing presses or publication office to any municipality in the same county or *in an adjacent county in this State.*

Defendant, *The Daily Journal,* points to the fact that the *Courier* was entered as second-class in Bridgewater in March 1972. Second-class matter under *chapter* 63 of *Title 39, U. S. Code Annotated,* "embraces newspapers and other periodical publications when entered and mailed in accordance with sections 4352 [and] 4357 of this Title." Section 4352 provides that "upon application in the form prescribed by him the Postmaster General shall enter as second-class mail, *at the Post Office where the office of publication is*

*maintained,* any publication which is entitled * * * to be classified as second-class mail (emphasis mine). A publication entered at one post office may also upon application be entered by him at another office." (Emphasis supplied) § 4354 a mailable periodical publication is entitled to be entered and mailed as second-class mail if it is (1) regularly issued at stated intervals as frequently as four times a year, bears a date of issue and is numbered consecutively; (2) issued from a known office of publication; (3) formed of printed sheets; (4) originated and published for the dissemination of information of a public character, etc., and (5) has a legitimate list of subscribers.

It is apparent that the *Courier* regards its office of publication as being in Bridgewater and not Plainfield. It could have maintained its Plainfield entry and one in Bridgewater under the above provisions, as was pointed out in *Hunterdon County Democrat v. Recorder Publishing Co.,* 117 *N. J. Super.* 552 (Ch. Div. 1971). There seems to be a distinct correlation between that portion of *N. J. S. A.* 35:1–2.2 requiring publication in the municipality where the publication office is situate and the one dealing with the entry of the newspaper as second-class mail matter. The *Courier* now satisfies the statute in that it has published in the municipality where the publication office is situate, namely, Bridgewater, and has been entered as second-class mail matter there. This court finds no statutory restriction under *N. J. S. A.* 35:1–2.2 as to the *Courier's* qualifications to publish "official advertising" required by law.

The remaining problem the court is now faced with concerns an interpretation of the several statutes in *Titles* 40 and 40A. This determination turns on a definition of the word "publish" as it is used in these various statutes.

"Publish," as found in *Black's Law Dictionary,* (4th Ed. Rev. 1972), at 1397, means:

* * * "to make public; to circulate, to make known to people in general. *U. S. v. Baltimore Post Co., D. C. Md.,* 2 *F.* 2d 761, 764; *In re Willow Creek,* 74 *Or.* 592, 144 *P.* 505, 515. To issue; to put

into circulation, *In re Willow Creek*, 74 *Or.* 592, 144 *P.* 505, 515 * * *"

to "publish" a newspaper ordinarily means to compose, print, issue and distribute it to the public, and especially its subscribers, at and from a certain place. To "print" may therefore refer only to the mechanical work of production. *In re Monrovia Evening Post*, 199 *Cal.* 263, 248 *P.* 1017, 1019, and constitutes a narrower term than "publish". *In re Publishing Docket in Local Newspaper*, 266 *Mo.* 48, 187 *S. W.* 1174, 1175.

Plaintiff in its brief asserts "it can be seen that certain notices under *Titles* 40 and 40A may be placed in newspapers that *publish in the municipality*, or that circulate in the municipality, or that are printed in the municipality or county, or that publish in the county and are circulated in the municipality. Clearly, the statutes demonstrate that "publish" signifies more than "circulate," but both terms are used in an attempt to achieve wide public dissemination of the subject matter being printed.

But the court cannot ignore the specific language where it is so employed. It must be adhered to precisely where it is used, as for example in *N. J. S. A.* 40:49–2. The legislative intent is to treat the words "publish" and "circulate" not as companion words having the same meaning but having in fact different meanings under the statutes utilizing such words.

■ It is the holding of this court that when defendant, *The Courier-News*, moved out of Plainfield, Union County, in 1972, to a new printing location nine miles away in the adjacent County of Somerset, it did not lose its qualification under *Titles* 40 and 40A for the municipality of Plainfield.

The fact that it distributes its first papers in Plainfield and that it has an "office" in Plainfield where undisputedly the news, advertising and sales affairs affecting the Plainfield citizens are gathered, are factors such as would satisfy the requirements of these statutes. These people are devoted to the news media, advertising and classified interests of the inhabitants of Plainfield. The inhabitants are therefore enjoying the same concern of the newspaper as they did before

the newspaper physically moved its plant, which used to be upstairs on Church Street, to the nearby town of Bridgewater.

The circulation is just the same as it was before the move. There is nothing to indicate that the average reader would expect to find any different orientation in the newspaper to the community of Plainfield.

With the circulation figures being as they undisputedly are, it would strain the thinking to assume that the average Plainfield resident would not still be looking to the *Courier* for the happenings at city hall in relation to city government its attendant publication of all of its legal business. *The Courier News,* under the facts and circumstances which we are herewith confronted, would undoubtedly be the "town crier" for the City of Plainfield if these were colonial times. To hold that the *Courier* is not published in Plainfield would be to distort the statute out of meaning or intent. "Statutes should be read sensibly so as to be consistent with reason and good discretion," *Schierstead v. Brigantine,* 29 *N. J.* 220, 230 (1950) ; *Keenan v. Essex Cty. Board of Chosen Freeholders,* 105 *N. J. Super.* 271, 279 (Law Div. 1969) ; and that interpretations which lead to absurd or unreasonable results are to be avoided. *State v. Gill,* 47 *N. J.* 441, 444 (1966).

It is therefore the determination of this Court that defendant, *The Courier-News* is legally qualified to be the official paper of the City of Plainfield, and, in light of the standards set forth in Titles, 40 and 40A of the statutes, it further qualifies to publish the official notices for that city.

Defendant, *The Daily Journal,* only meets the requirements of *N. J. S. A.* 40 :49–2 (a) and 40A :2–19 and 40A :11–23 so long as there is no newspaper "published in the municipality" (Plainfield).

Under the facts and circumstances we are currently considering in this case, the *Courier* must be declared the official newspaper of the City of Plainfield. It must be remembered, however, that these facts may change in the future and thereby

remove the now existing qualifications of the *Courier* as the official paper. Should the Courier substantially change its orientation, remove people from the Plainfield office who are dedicated to gathering information, news and advertising sales for that city, or substantially reduce the number of papers distributed in the city, the *Courier* would lose its qualifications for publication of legal advertising for the City of Plainfield.

This court, taking judicial notice of the varied statutes with which a municipality must conform in advertising in newspapers, incorporates into this holding the above interpretations as to the following and such other statutes as may contain the same requirements:

| Revised Statutes | Subject Matter | Publication Requirement |
|---|---|---|
| 40:14A-14 | Bond resolution adopted by sewerage authority | "publish in a newspaper published or circulating in the district (municipality)" |
| 40:14B-28 | Bond resolution adopted by municipal utility authority | " |
| 40:45-3 | Notice of special municipal election | " |
| 40:43-66.13 | Plan of consolidation of municipalities | "publish in a newspaper of general circulation in the municipalities" |
| 40:46-6.16 | Notice of petition for grant of tenure to tax collector | "publication in one or more newspapers published in the municipality, if there be one, if not published in the county" |
| 40:49-2 | Procedure for passage of ordinances | After introduction, (a) "Publish in a newspaper published and circulated in the municipality, if there be one, if not, in a newspaper printed in the county and circulating in the municipality"<br><br>Upon passage, (d) "Publish in a newspaper circulating in the municipality, if there be one, and if not, in a newspaper printed in the county and circulating in the municipality" |

| Revised Statutes | Subject Matter | Publication Requirement |
| --- | --- | --- |
| 40:49-18 | Notice of hearing on report of assessment for local improvement | "Publish in a newspaper published and circulated in the municipality, if there be one, if not, in a newspaper printed in the county and circulating in the municipality" |
| 40:49-9 | Notice of Election after protest of local government | "Publish in a newspaper published in the municipality, or if there be no such newspaper, then in a newspaper published in the county and circulating in the municipality" |
| 40:53-2 | Public notices where manner of publication not otherwise specifically provided for | "Publish in at least one newspaper published and circulating in the municipality, and if there be no such newspaper, then in at least one newspaper published in the county in which the municipality is located and circulating in the municipality" |
| 40:49-27 | Notice of election protesting debt ordinance | "Publish in a newspaper published in the municipality, or if there be no such newspaper, then in a newspaper published in the county and circulating in the municipality" |
| 40:63-45 | Bids for disposal plants | "Advertise in at least one newspaper published or circulating in the municipality" |

| | | |
|---|---|---|
| 40:179-11 | Proposals for operation of wharves | "Print in two newspapers published and circulating in the county in which such city is located" |
| 40:55-1.7 | Notice of planning board hearing | "Published in the official newspaper of the municipality or in a newspaper of general circulation in the municipality" |
| 40:55-1.36 | Notice of hearing on Official Map | " |
| 40:55-21.5 | Notice of blighted area hearing | "Publish in a newspaper of general circulation in the municipality" |
| 40:55-25 | Notice of hearing to establish building line on any street | "Publish in two daily newspapers for 2 insertions, or in a weekly newspaper circulating in said municipality for one insertion" |
| 40:55-34 | Notice of hearing to consider zoning ordinance | "Publish in an official newspaper, if there be one, or otherwise in a newspaper of general circulation in the municipality" |
| 40:56-25 | Notice of hearing of assessment commissioners | "Publish in a newspaper circulating in the municipality" |
| 40:56-30 | Notice of governing body hearing to confirm report | "Publish in a newspaper circulating in the municipality" |

| Revised Statutes | Subject Matter | Publication Requirement |
| --- | --- | --- |
| 40:75–30 | Notice of recall election | "Publish in a newspaper circulating in the municipality" |
| 40:57–3 | Notice of intention to reclaim lands under water | "Publish in 2 newspapers published in the county and if a paper is published in the municipality it shall be one of those so selected" |
| 40:60–33 | Notice of referendum | "Published in at least two newspapers printed or circulating in the municipality" |
| 40:61–8 | Notice of referendum | "Publish in a newspaper circulating within the municipality" |
| 40:63–57 | Notice of sewer connection | " |
| 40:64–9 | Notice of shade tree planting | " |
| 40:65–4 | Notice of sidewalk improvement | " |
| 40:69A–202 | Notice of ward boundaries | " |
| 40:62–4 | Advertising for bids for utility system | "Publish in one or more newspapers circulating in the municipality" |
| 40:62–105.18 | Notice of water district election | "Advertise in some newspaper circulating in said water district" |

| 40:69A–157 | Publication of candidates for certain municipal elections | "Publish in each of 2 newspapers having the largest circulation in such municipality, and published in state, provided, however, if there is a newspaper of general circulation published in the municipality, 1 of the 2 notices should be published in such newspaper although it is not of the 2 in greatest circulation" |
|---|---|---|
| 40:69A–171 | Notice of recall election | "Insert notice in a newspaper published in the municipality or if there be no such newspaper, then in a newspaper having general circulation in such municipality" |
| 40:69A–194 | Voter referendum on ordinance | "Publish in at least two of the newspapers published or circulated in the municipality" |
| 40:71–2 | Notice of election to change form of government | "Publish in at least one newspaper printed and published in the municipal and if there be no such newspaper, then in a newspaper circulated therein" |
| 40A:2–19 | Publications under Local Bond Law | "Published in a newspaper published and circulating in the municipality, if there be one, and if not, in a newspaper published in the county and circulating in the municipality" |

| Revised Statutes | Subject Matter | Publication Requirement |
|---|---|---|
| 40A:4–6 | Local Budget Law publications | "Published in a newspaper published and circulating in the municipality, if there be one, and if not, in a newspaper published in the county and circulating in the municipality" |
| 40A:5–7 | Publication of municipal audit under Local Fiscal Affairs Law | "Published in the official newspaper of the local unit, if there be one, or if there be none, in a newspaper published in the local unit; if there is none, in a newspaper having a general circulation in the local unit" |
| 40A:11–23 | Local Public Contracts Law — advertising for bids | "Published in a newspaper of general circulation published in this State and circulating within the territory included within or served by the contracting unit" |

While the above list is not intended to be exhaustive, it would seem to cover most of the pertinent statutes. It should be noted that although plaintiff seeks an interpretation specifically of *N. J. S. A.* 40:53–2, *supra,* it would appear that this statute does not pertain to Plainfield, as Plainfield is a *city* and the statute specifically *"excepts cities."* Additionally, *N. J. S. A.* 40:49–2 deals specifically with the publication of ordinances. This court has been provided with no factual situation where the publication of any ordinance would not be governed by this statute. *N. J. S. A.* 40:53–2 covers only situations where "the manner of publication is not otherwise specifically provided for."