72 So.2d 704

### SELMAN v. BRYANT.

#### 8 Div. 694.

Supreme Court of Alabama.

March 25, 1954.

Rehearing Denied May 13, 1954.

Marion F. Lusk, Guntersville, for appellant.

Scruggs & Scruggs, Guntersville, for appellee.

ing partner of the firm of W. P. & T. H. Selman, as a result of hundreds of transactions between the parties arising out of the sales of mules to Bryant by the Selman firm. From a final decree complainant has appealed.

The parties had been doing business about seven years and after the death of W. P. Selman, complainant employed a bookkeeper to make an audit of respondent's account; the respondent disputed the conclusions of the bookkeeper's audit and this bill was brought, resulting in a finding by the register that the complainant owed the respondent $47,361.32. The complainant and the respondent each filed exceptions to the register's report; the trial court, excepting one item, upheld the register's findings and rendered a final decree adjudging complainant to be indebted to the respondent in the amount of $16,220.50. It is from this decree that the complainant has appealed.

The complainant's exceptions to that portion of the register's report disallowing certain lost notes amounting to $31,140.83 were sustained by the trial court. The respondent, on cross-appeal, contends that the lower court erred in sustaining said exceptions.

The register's finding of fact was based on testimony of witnesses orally before him and is, therefore, presumed to be correct. And unless it is against the preponderance of the evidence, it must prevail, and this without regard to the decision of the chancellor. So we will review the finding on that basis. Fricke v. City of Guntersville, 257 Ala. 442, 59 So.2d 590.

Where relief is sought, the basis of which is a lost instrument, the one to whose interest it is to establish it must do so by clear and convincing evidence. Bates v. Bates, 247 Ala. 337, 24 So.2d 440.

Testing the evidence by these legal guides, we have concluded that the register's finding on this point was in error and that the trial court properly sustained the complainant's exceptions to that portion of the register's report disallowing the lost notes. We attain this conclusion from the

SIMPSON, Justice.

The bill of complaint sought an accounting between the respondent, Bryant, and the complainant, T. H. Selman, as surviv-

following salient facts: The respondent bought mules from the firm of W. P. and T. H. Selman under an arrangement whereby the respondent gave the firm his note for each lot of mules purchased by him. When the respondent sold the mules to farmers, he would receive part payment in money and the balance in customers' notes payable to the Selman firm; these notes were forwarded to the firm as collateral security. The direct notes given by respondent to the firm in payment of the mules were described and listed in single entry ledgers and immediately below was a list of the collateral or customers' notes. After the death of W. P. Selman the complainant, as surviving partner of the Selman firm, employed a bookkeeper and auditor, one J. H. Edge, who began an audit of the respondent's account. The respondent accepted an invitation to work on this audit and was present when much of the work was done. The account was being examined and the conferences were held in the back room of the old bank building; occasionally Mr. Edge would absent himself from this room, leaving Mr. Bryant, the respondent, alone in the back room with the books and notes. Dr. Selman, father of complainant, testified as to respondent's suspicious conduct and that on several occasions he looked from the front of the building into the room in which the conferences were being held and noticed that when Mr. Edge would leave the room, respondent would get up, be over at the desk, moving his hands around over the desk and looking toward the front of the building. Mr. Edge testified that the respondent on one occasion asked him to go over the direct notes with him again and it then appeared that some $29,000 of these direct notes were missing. Edge also testified that the respondent said "they must be here some place—they were here the other day." Mr. Galloway, witness for the complainant and formerly associated in business with the respondent, accompanied respondent to two of these conferences and testified to like effect. In response to respondent's said statement, Mr. Edge replied "that won't make much difference, I have them listed here on the books." These notes were never found. Mr. Edge made copies of them, which were introduced into evidence. It appears that when Mr. Edge began the examination of the account he made a typewritten statement of every note; this was incorporated in his audit before the notes were missing. When it was discovered the notes were missing, he went to the record of the audit taken from the notes themselves and not from the ledger entries. There was also testimony that the respondent had examined this audit, listing the notes from which Mr. Edge made the copies. Mr. Edge testified that when he began the audit he had in his possession all the notes, including those which were later missing; that he exhibited the notes to the respondent during the time he was making the audit and when the missing notes were not found that he thus made out the duplicate copies. When shown the single entry ledgers, the respondent admitted on the witness stand that they contained a list of his direct notes and that below each direct note was listed the collateral notes representing the sale of the mules for which the direct notes had been given. In answer to a question, the substance of which was if the respondent did not give the allegedly lost notes and if "that was a bogus transaction [entry in the ledger] all this matter down here below about the sales notes would be bogus, wouldn't it?" the respondent replied, "Yes." At this juncture each of the entries of the missing direct notes was pointed out to him and he admitted that he received from the farmers the customers' or sales notes listed below each direct note. With regard to the missing notes the following questions were propounded to and answered by the respondent at the hearing before the register:

"Q. You won't say that you didn't give such notes? A. I don't know whether I did or not."

"Q. You don't make the positive statement that you did not give them. A. I don't think I did. * * *"

The respondent denied, of course, that he took the notes and he also stated that no one within his knowledge took them,

but on the whole evidence we think the trial court correctly ruled in sustaining the complainant's exceptions in this regard and in allowing the lost notes in the statement of the account.

The appellant argues error on the part of the register in the failure to calculate interest on the direct notes from date until paid, as provided in them.

■ The appellee first urges in answer to this contention that because of the omission in the complaint of an averment claiming or praying for interest, the appellant was not entitled to it. The bill was for an accounting and for such further relief as complainant might be entitled to. The filing of a bill for accounting implies that there are items on both sides, that the balance is uncertain and that the true amount and to whom due must be ascertained by the court. Grand Bay Land Co. v. Simpson, 205 Ala. 347, 87 So. 186. And technical accuracy in all details is not required in the pleading of a bill for accounting. Dewberry v. Bank of Standing Rock, 227 Ala. 484, 150 So. 463. The appellant's right to relief was not grounded on a single special contract; to the contrary, the bill averred that the complainant had in his possession respondent's direct notes with a total face obligation of $224,970.40 and that hundreds of transactions between the parties had taken place during a seven-year period. Therefore, the bill for an accounting with the prayer for all necessary relief was sufficient and special averment claiming interest was unnecessary.

■ The notes provided for interest at the rate of eight per cent (8%) per annum until paid. The register only allowed interest to the date of maturity and appellee contends that this amounted to a finding of fact that the direct notes were paid on or before maturity, thereby necessitating an affirmance here in view of the favorable presumption attending that finding. We have assiduously traveled through the maze of intricate bookkeeping in order to determine whether there is any showing the direct notes were paid on or before maturity. At no place in the voluminous record (transcript about 700 pages) and the numerous exhibits do we find any basis for the register's finding, viz., the direct notes were paid on or before maturity. Appellee seems to take the position that some kind of burden or duty rested on the complainant to show a right to the interest on the notes to a certain date. He asserts in his brief "the books were appellant's books, and, if his system of bookkeeping is such that therefrom it is impossible to compute interest, he should not now be heard in complaining as to interest." Such a position is untenable and does not comport with the rule of law in such cases. The rule is axiomatic that where a contract provides for interest until paid, such interest continues until the debt is collected. Davis v. Anderson, 224 Ala. 400, 140 So. 423. And the burden of proving payment rests upon the party relying upon payment as a defense. Meador-Pasley Co. v. Owen, 222 Ala. 392, 133 So. 35; Robinson v. Smith, 207 Ala. 378, 92 So. 546. So all notes which bore interest until paid, when introduced into evidence imposed the burden upon the appellee to show payment and when made— whether before or after maturity. Stated another way, the question was whether and when the direct notes were paid by an application of credits derived from the collections made on collateral notes. Absent a contract to the contrary, the interest is to be computed on the principle declared by statute where there are credits representing partial payments. Title 9, § 64, Code. Whether those credits are sufficient to constitute payment in full of the direct obligations with interest depends upon the date and amount of each credit as a payment resulting from the receipt of sums derived from the collateral notes. The burden was upon respondent, claiming that the direct notes had been paid by an application of the credits as partial payments, to furnish proof of the amount and date of each such credit so that the interest could be calculated in accordance with the stated principle. It results, therefore, that for the failure below to take cognizance of the foregoing rule and to figure the interest on all direct notes which in fact bore interest until payment thereof, the cause must be reversed

so that the facts can be further developed in that respect and the interest accurately computed.

■ The appellant excepted to that part of the register's report which charged the complainant with approximately $30,000 of uncollected customers' notes. The trial court overruled the exception. True, by the terms of the original agreement between the parties, the duty of collecting the notes was upon Mr. Bryant, the appellee, although the notes were payable to the Selman firm and were in possession of the firm and if the customers' notes were not paid, Mr. Bryant agreed to "take the note up." But on September 17, 1948, the complainant's attorney wrote a letter to Mr. Bryant expressly notifying and directing him that he (Bryant) must not thereafter collect any money on these collateral notes due the Selmans. The appellee contends that as a result of this notification inhibiting him from protecting himself by collecting the collateral notes, the appellant assumed the burden of collection and the same being collectible by the exercise of due diligence, the appellant thereby should be required to credit on the direct notes the amounts of these solvent collectible notes which he took over himself. The register approved this theory as correct, the trial court sustained it and we likewise are in agreement.

■ The principle is well established that where a party to a contract is the cause of the failure of performance of an obligation due him, he cannot take advantage of the failure. Williston on Contracts, §§ 595, 677; Tennessee & C. R. Co. v. Danforth, 112 Ala. 80, 20 So. 502; World's Exposition Shows, Inc., v. B. P. O. Elks, No. 148, 237 Ala. 329, 186 So. 721; Windsor Investing Corp. v. T. J. McLaughlin's Son, 130 Misc. 730, 225 N.Y.S. 7. There was sufficient evidence and the inferences reasonably arising therefrom to justify the register's finding and the trial court must be affirmed in sustaining the ruling charging the complainant with the uncollected collateral notes which he took over.

■ Another contention for error by appellant is that the interest on such direct notes as remained unpaid should have been calculated to the date of the statement of the account by the register—June 16, 1952. This position is untenable. To the extent that payments were made on the collateral notes, the appellee was relieved of liability on the direct notes, so when the appellant withdrew from the appellee the right to collect the collateral notes the interest would necessarily cease to run on all unpaid direct notes. Hence, as noted above, insofar as the appellee's failure to perform was thus caused by the appellant, appellant cannot take advantage thereof. Authorities, supra. As to those direct notes which bore interest from date of execution until paid, we have said the burden is on the appellee to show when payments or partial payments were made; failing, or if he cannot now show it, the interest should be calculated on the unpaid amounts due by the direct notes from the date of execution until the date the appellee was released by the appellant from the obligations by the withdrawal from him of the right to collect the amounts owing on the collateral notes. For method of calculating interest when partial payments are made see Title 9, § 64, Code, supra.

■ One challenge interposed by the complainant to the correctness of the register's report as sustained by the trial court is that the register found as correct the payment entries on the direct notes registered in the general ledger, which exhibit was a part of complainant's evidence. The argument runs that since these entries were taken from copies of receipts given by the defendant to the farmers on their collateral notes, the evidence was merely self-serving and cannot be treated as payment of money to the plaintiff by the defendant on his direct notes. The contention cannot be sustained. The complainant or his partner kept and posted the general ledger and the evidence was ample to the effect that all of the payments by "customers" on the collateral notes as listed on the general ledger were genuine payments and were made by the defendant to the complainants on the direct notes either personally to them in their home office in Georgia or by way of

deposits to their credit in the banks theretofore designated by the firm as the depositories for the funds.

 The appellee in brief contends that an employee of the appellant, without the authority of the appellee, materially altered certain non-interest bearing direct notes after said notes were executed by the appellee so as to make them bear interest and that the register's computation erroneously included that interest. The appellee, however, failed to file an exception to that part of the register's report and no objection having been made in the trial court, it cannot for the first time be raised in this court. Lehman v. Levy, 69 Ala. 48(4); Lavretta v. First National Bank of Mobile, 238 Ala. 265, 189 So. 881; Staley v. International Agr. Corp., 239 Ala. 98, 194 So. 168; Vick v. Bishop, 252 Ala. 250, 40 So.2d 845.

 One of appellant's arguments is addressed to the failure of the register to allow attorney's fees as provided for in the direct notes. Stipulations in notes whereby the debtor contracts to pay the attorney's fee of the creditor means "the attorney's fee actually and reasonably incurred by reason of the default of the debtor." Hamilton v. Burgess, 233 Ala. 4, 170 So. 348. A default as to notes consists in the nonpayment thereof. First State Bank of Kansas City v. Bone, 122 Kan. 493, 252 P. 250. In the case at bar, the obligations owing the complainant were less than the credits existing in favor of the respondent and the register found that the complainant in fact owed the respondent, which finding, except as to the "lost notes," was affirmed by the trial court. Pretermitting any consideration of whether or not the right to attorney's fees must be rested on special pleading claiming same, the appellant has failed to show the court a default in payment by the appellee and is not therefore entitled to attorney's fees.

 The appellant raised an issue in his brief as to the mathematical accuracy of the register's report in the addition of the deposits in the State National Bank. The appellant has also taken the position that the defendant should not be credited on the direct payment statement with a check in the amount of $255 (Exhibit No. 127). Suffice it to say that no objection to the correctness of these items of the register's report having been made in the trial court, they cannot for the first time be raised in this court. Lehman v. Levy, supra; Lavretta v. First Nat. Bank of Mobile, supra. It is worthy of note, however, that after adding the several items contained in the complainant's exhibits, we are of the opinion that the register correctly added the deposits.

It therefore results as our conclusion that the decree must be reversed and the cause remanded to the end that the accounting between the parties may proceed in accordance with the legal principles hereinabove enunciated. So ordered.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.

On Rehearing

SIMPSON, Justice.

Appellee again makes reference to thirty-one direct notes executed by Bryant to Selman claimed to have been altered after execution so as to provide interest and contends that we made no holding with respect to whether or not interest was recoverable. These notes, liability thereunder and the applicability of Title 39, § 120, Code 1940, was not before the court, as was pointed out on original deliverance—no exceptions to the register's report having been taken in that regard.

For future guidance of the register in stating the account, we will also respond to the second contention urged by appellee on rehearing that the collateral notes taken over by the appellant should bear interest until termination date of the relationship of the parties September 17, 1948. That statement is a correct hypothesis upon which to rest a finding and the original opinion should not be misconstrued to the contrary.

Rehearing denied.