123 So.2d 149

**ORKIN EXTERMINATING COMPANY OF NORTH ALABAMA et al.**

v.

**A. S. KRAWCHECK.**

6 Div. 409.

Supreme Court of Alabama.

May 19, 1960.

Rehearing Denied Sept. 15, 1960.

of the capital stock of the Alabama corporation and was its president and dominated and controlled its business.

The bill also shows that contracts were entered into between Orkin, the complainant Krawcheck, and the Alabama corporation, whereby complainant was employed as General Manager of the business of the Alabama corporation. Various agreements were entered into between these parties, but the primary agreement of employment was entered into between them January 2, 1942. This agreement is attached to the bill and made a part thereof and marked "Exhibit 2".

This agreement provides that Otto Orkin is the owner and holder of the majority of the capital stock of the Alabama corporation and its President, and that said Orkin and the complainant would continue to manage the business and affairs of that corporation and desired to enter into a working agreement; and it was agreed in substance as follows:

1) That the corporation employed complainant who agreed to work for it for the term of five years from the date thereof as General Manager of that corporation and that during the term of this agreement he should devote his entire time and energy to the furtherance of the business of the corporation.

2) As consideration for said active employment, he should receive from the corporation the sum of $700 monthly as a salary, payable semimonthly, or at such salary or commission as may hereafter or from time to time be agreed upon in writing.

3) That Otto Orkin should continue to be President of the corporation and receive $625 per month as salary, or at such salary or commission as may hereafter from time to time be agreed upon in writing, and shall give to this corporation just such time and attention as he thinks may be necessary.

Maurice F. Bishop, Birmingham, and Irving K. Kaler, Atlanta, Ga., for appellants.

Winston B. McCall, Victor H. Smith, Pritchard, McCall & Jones, Birmingham, for appellee.

SIMPSON, Justice.

Complainant, Krawcheck, filed a bill in equity seeking discovery, accounting and a declaratory judgment. ·Respondents filed demurrers which were sustained. Complainant amended his bill and demurrers to the amended bill of complaint were overruled. From this latter ruling respondents appeal.

The facts alleged in the amended bill of complaint, insofar as material here, are:

The bill is filed by complainant, Krawcheck, a resident of Jefferson County. Respondents are Otto Orkin; Orkin Exterminating Company, Inc., a Georgia corporation, whose principal place of business is in Atlanta; Orkin Exterminating Company of North Alabama, an Alabama corporation; and Orkin Exterminating Company of South Alabama, an Alabama corporation. The demurrers of the last named two corporations are involved on this appeal.

Respondents Otto Orkin and the Orkin Exterminating Company, Inc. of Georgia had not been served when the decree appealed from was rendered, but were subsequently served.

The bill alleges that for many years prior to January 2, 1942, Otto Orkin, by means and through the agencies of numerous corporations (among which was the Orkin Exterminating Company, Inc., an Alabama corporation), was in the business of eradicating or controlling vermin, insects, etc.; that Orkin was the beneficial owner of all

4) That various steps would be taken in the event of insufficient funds in the company's bank account to pay the salaries.

5) That during the life of the contract the complainant would not act in an advisory, financial, or other capacity for competitors of Otto Orkin and the corporation in cities in which Orkin and the corporation have an interest or business.

6) That neither Orkin nor the complainant shall have the right to draw on the funds of the corporation deposited in Alabama for personal use, other than the amount specifically set out in the contract unless agreed to in writing by all of the parties.

7) That all cash on deposit in Alabama to the credit of the corporation in excess of $500, as of June 30 and December 31 of each year, representing company net profits, shall be divided equally between the complainant and the corporation and be payable June or July of each year during the life of the agreement; payments to the corporation to be made by depositing its share of the excess cash to a special bank account in Atlanta, Georgia, which funds should be subject to future action of the officers and directors of the corporation and against which complainant·should have no claim. That in the event the agreement was terminated, the $500 bank balance should be divided equally between complainant and the Alabama corporation.

8) That upon death or permanent incapacity of complainant prior to the termination of the agreement, any salary or additional compensation due him as his share of the cash profits at such time should be payable to him or his estate, and on the death of Orkin, the party designated by the corporation should stand in his place until the termination of the agreement.

9) That in addition to salary, the corporation should pay Orkin a monthly charge of $100 to cover the cost of keeping books, records and auditing expenses, and for his reimbursement for reasonable postage, telephone and telegraph expense.

10) That $50 a month allowance be given to complainant to cover cost of entertaining customers.

11) That nothing in the agreement should be construed as cancelling any restrictive covenant that existed between complainant and Orkin.

12) That at the expiration of the five year term of the agreement of December 31, 1946, it should be automatically renewed for an additional period of five years to December 31, 1951, unless a minimum of 12 months' notice by registered mail were given by either of the parties to the other, of his or its desire that the agreement be not renewed; that if such notice is given, the agreement should expire as of December 31, 1946.

13) That in the event the agreement was renewed to December 31, 1951, it should be automatically renewed for an additional period of five years to December 31, 1956, unless a minimum of 12 months' notice by registered mail was given by either of the parties to the other of his or its desire that the agreement be not extended.

The bill alleges that at the time the contract shown by Exhibit 2 was executed on January 2, 1942, Otto Orkin operated his exterminating business in the southeastern states by means of various local corporations, including Orkin Exterminating Company, Inc., the Alabama corporation, and that corporate stock of each of said corporations was owned by or for the benefit of Orkin; that the volume of business at first was comparatively small, but the business and profits progressively increased; that income tax for the corporations, including

the Alabama corporation, was made on the accrual basis; that in practice, in carrying out the several contracts between the complainant and the respondent, Orkin, and the Alabama corporation, prior to the execution of Exhibit 2, one-half of the cash in bank at the time of making annual and semi-annual settlements belonged to the local manager of the particular corporation (in case of the Alabama corporation, one-half belonged to complainant and the other one-half belonged to the respondent, Orkin); that at the end of the respective fiscal years of the Alabama corporation, there were uncollected but collectible accounts receivable due that corporation, the amount of which progressively increased, which were collected subsequent to the end of the fiscal year and were divided between complainant and Orkin in the particular year the same were collected; that the amount which was drawn by Orkin and by complainant was charged as expenses; consequently, there was no income tax chargeable to the corporation on that account; that the amount represented by the corporate accounts receivable during the tax year, after charging off depreciation, etc., was treated as taxable income of the corporation, and the tax so due was paid out of the corporate bank account as an expense, and which was considered in dividing the cash in the bank in the particular year; that the federal and state tax authorities disapproved and refused to recognize the method of charging one-half of the cash in bank as a salary to Orkin, some time before Exhibit 2 was executed.

The bill further shows that when Exhibit 2 was entered into, its tax impact on the profits of the Alabama corporation which would accrue to complainant was not computed or fully considered; but that the respondent, Otto Orkin, and his agents, acting on his behalf, in negotiating the contract shown by Exhibit 2 with complainant, assured complainant that his half of the profits of the Alabama corporation would not be reduced or affected by reason of any increased corporate income tax on account of the other half of the profits being placed in the special bank account referred to in Paragraph 7 of Exhibit 2, which money had been previously drawn as a salary by Orkin. It is averred that complainant was not a lawyer, nor an accountant, nor was he familiar with the tax laws and their application to the business, or their effect on the amount of money which would accrue to him for his half of the profits of the corporation; that he relied upon the representations and assurances of respondent Orkin and his agents, and entered into the contract shown by Exhibit 2, in reliance thereon.

Various other instruments are made exhibits to the bill, which complainant alleges either modified or clarified the primary employment agreement entered into between the parties and set forth in material aspects above.

The complaint further avers that when the income taxes of the Alabama corporation were computed for the fiscal year following the execution of the employment agreement (Exhibit 2 referred to above) it became apparent that by reason of its provisions, which required the payment of the one-half of the profits of the business which had been previously paid to Orkin as a salary, to be paid into the special fund of the Alabama corporation as undivided surplus, the amount of money to which complainant was entitled as his one-half of the profits had been greatly reduced by treating the other one-half formerly drawn as salary by Orkin as taxable income to the corporation; that on discovery of such loss he protested to respondent, Orkin, and called his attention that he had executed Exhibit 2 under the representations and assurances that his part of the profits would not be reduced on account of such changed method, and that at that time he was reimbursed out of such special fund for the subsequent fiscal years to and including the year 1950, and alleges that Orkin directed the company accountant to so calculate and pay complainant the amount necessary to equalize excess taxes annually paid out.

Orkin's letter to the accountant authorizing this procedure is also made a part of the bill. Complainant, it is alleged, was reimbursed on this basis up to and including the year 1950.

The complainant further alleges that this agreement on behalf of the Alabama corporation as evidenced by this letter, copy of which was attached, constituted an interpretation of Exhibit 2 by the parties and became a part of that contract (Exhibit 2).

Complainant further averred that he never agreed to cancel or alter or modify the obligation of the Alabama corporation or any successor with respect to such reimbursement.

The bill further alleges that about the year 1951 the respondent, Orkin, and the Alabama corporation, transferred the right, title and interest of the Alabama corporation to the respondents, Orkin Exterminating Company of North Alabama, and Orkin Exterminating Company of South Alabama (the present appellants), both of which corporations agreed as assignees to carry out all of the obligations of the Alabama corporation, party to Exhibit 2, and the subsequent supplements and modifications thereof.

It is further alleged that during the year 1950 Otto Orkin notified complainant that it was his intention to discontinue the reimbursement of complainant on account of such income taxes of the Alabama corporation as had been theretofor agreed to be paid and as had been paid by such Alabama corporation; that complainant refused to accede to such discontinuance and insisted that such reimbursements be made as so agreed; that considerable discussion was had in that regard between complainant and Orkin, and that proper reimbursement was made to complainant on account of such income taxes for the year 1950; and thereafter considerable discussion was had between the parties during the years 1951 and 1952, during all of which time complainant insisted that it was the duty of the North and South Alabama corporations as trans-

ferees of the employment contract to continue to reimburse complainant. It is alleged that failing to obtain a satisfactory conclusion, complainant employed counsel to represent him in obtaining such reimbursement and the respondents likewise employed counsel.

The bill alleges in detail various negotiations and discussions and correspondence between counsel for complainant and respondents. All of this culminated in an agreement, which is marked "Exhibit 7" and made a part of the bill, entered into July 31, 1953, which provided that complainant had received some $9,969.35 in full settlement of all claims arising out of any transaction between the parties up to and including August 31, 1952.

Exhibit 7 provides in part:

"* * * It is understood and agreed that the existing employment agreement shall continue in full force and effect other than as expressly modified by this agreement. * * *

"It is expressly agreed by and among the parties hereto that this instrument constitutes a complete accord and satisfaction of all claims, actions, suits, damages, judgments, executions and demands whatsoever, which any of said parties might have against the other, arising, accruing to or in being at any time prior to and including October 31, 1952 * * *.

"It is specifically understood and agreed that all of the claims, contentions and demands whatsoever of the General Manager for a participation in profits or in cash and bank balances of the Alabama corporations for any time up to and including October 31, 1952, have been and are satisfied in full by said payment of $9,969.35."

The complaint alleges and the appellee argues here that this agreement of July 31, 1953, providing for the payment of $9,969.-35 to complainant in full settlement of all claims against respondents-appellants, was not a settlement of all his claims for the

duration of his contract of employment, but extended only up to and including all claims arising before October 31, 1952, and that the prior agreement of January 2, 1942, as modified at various times subsequent to 1942, is still in force and that one modification was made by letter from Orkin to the accountant ·directing him to calculate and pay complainant the amounts due him as a result of tax liability incurred by the corporation due to the disallowance of the amounts previously paid Orkin as salary, which became taxable to the corporation.

The primary contention of appellants and as set forth in demurrer is that there was a complete accord, satisfaction and settlement between the parties as evidenced by the 1953 agreement.

Not all contentions of the parties to this appeal need be set out. As we understand the case, the main issue amounts to this:

Complainant, appellee, contends and has alleged in his bill that a justiciable controversy exists between himself and respondents in this: Complainant alleges that the 1953 agreement did not change or modify the employment contract of 1942 except as specifically set forth therein; that the 1942 contract provided for reimbursements to be made complainant as a result of the tax expenditures made by the corporation—this by reason of various letters and correspondence which modified the 1942 contract to so provide for payment to complainant. Respondents, on the other hand, take the position that the 1953 settlement agreement under which the complainant was paid $9,-969.35 completely satisfied all claims of complainant and is the controlling agreement—that all prior agreements were merged therein and it is the last and only agreement between the parties, and it precludes any claim by complainant for reimbursements on account of tax payments.

It is regrettable to have burdened this opinion with such an elaborate statement of facts, but it is necessary for an understanding of the case. This appeal is from a decree rendered on demurrer. If the bill of complaint contains equity, the demurrer was properly overruled and the decree is due to be sustained.

In addition to praying for a declaration of his rights under the agreement of 1942 as modified, complainant prays for an accounting and discovery, having alleged that he does not know the amount due him under such agreement, and does not have access to the company records, etc.

■ Ordinarily the test of sufficiency of a complaint in a declaratory judgment proceeding is not whether the complaint shows that the complainant will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all, and if the complaint states the existence of a bona fide justiciable controversy which should be settled, a cause of action for declaratory judgment is stated and the demurrer should be overruled. Code 1940, Title 7, § 157; Henry v. White, 257 Ala. 549, 60 So.2d 149; Waterworks and Sanitary Sewer Board v. Dean, 260 Ala. 221, 69 So.2d 704; Little v. Redditt, 264 Ala. 371, 88 So.2d 354; American Auto Insurance Co. v. English, 266 Ala. 80, 94 So.2d 397.

■ The bill states facts showing that a controversy exists between the parties as to their respective rights under the 1953 agreement. There are also allegations supporting the assertion that a justiciable controversy exists between the parties as to their rights and obligations if any under the 1942 agreement.

■ It is apodictic that where a bill seeking a declaratory judgment shows a bona fide justiciable controversy which should be settled, the demurrer thereto should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper on submission for final decree. Mobile Battle House v. City of Mobile, 262 Ala. 270, 78 So.2d 642; Curjel v. Ash,

263 Ala. 585, 83 So.2d 393. It is and has been the policy of this court to affirm a decree overruling a demurrer to a bill seeking a declaratory judgment which contains the essential statutory averments. Adams Supply Co. v. United States F. & G., 265 Ala. 178, 90 So.2d 284. The only exception to this general rule, so far as we know, is that where there is no factual controversy, and only a question of law is presented for decision, and particularly where counsel argue the case on the basis that a decision would settle the controversy and be desirous, it is proper to decide the question on demurrer. Shew v. City of Gadsden, 265 Ala. 253, 90 So.2d 768. Such is not the case before us, however. Mobile Battle House v. City of Mobile, supra; Atkins v. Curtis, 259 Ala. 311, 66 So.2d 455.

■ It is our view, then, that the bill of complaint states a case for declaratory judgment under Title 7, § 156 et seq., Code of Alabama of 1940, and the demurrer was properly overruled. As we said in Werneth v. Hanley, 262 Ala. 219, 78 So.2d 299, and other cases of similar import, demurrer is rarely appropriate in a declaratory judgment action.

■ That aspect of the bill seeking accounting and discovery in our opinion also contains equity and it was not error for the trial court to overrule demurrers interposed thereto. To sustain a bill for discovery and accounting, it is sufficient if it shows facts sustaining the allegations that the accounts are complicated when on one side only, or trust relations exist between the parties or a necessity for discovery of matters wholly within the respondent's knowledge. Martin Stamping & Stove Co. v. Manley, 260 Ala. 112, 69 So.2d 671. Nor is technical accuracy in all details required in pleading a bill for accounting. Selman v. Bryant, 261 Ala. 53, 72 So.2d 704.

In the view we take of the case, it is not necessary to go farther into the various contentions raised by appellants.

Affirmed.

GOODWYN, MERRILL and COLEMAN, JJ., concur.

On Rehearing.

SIMPSON, Justice.

The original opinion was addressed to issues involved in an appeal taken from a judgment entered on demurrer and was brought by appellants, Orkin Exterminating Company of South Alabama and Orkin Exterminating Company of North Alabama, the two Alabama corporations whose demurrers were overruled by the lower court. Respondents to the original bill and the bill as amended, as set out in the facts in the original opinion, included Orkin Exterminating Company, Inc., a Georgia Corporation, and Otto Orkin, a resident of Georgia. At the time the judgment was entered overruling demurrers filed by the two Alabama corporations these last two named respondents had not been properly served. Pending the appeal service was obtained upon them under Title 7, § 199(1), Code of 1940. Both non-resident defendants then filed motions to quash service in the Circuit Court and these motions were overruled. Thereupon these two last named appellants filed in this Court a petition for writ of certiorari, petition for writ of mandamus or petition for writ of prohibition, contending (1) That the trial court had no authority to rule upon the motions to quash, inasmuch as they were filed after the notice of appeal was filed by the other two respondents; and (2) That inasmuch as the two Georgia respondents had filed counteraffidavits to the effect that they had not done business in Alabama and hence did not come within the purview of Title 7, § 199(1), and that the trial court erred in overruling their respective motions to quash and his ruling thereon should be stricken from the record. The appeal on demurrer and the petition for writ of certiorari, mandamus, or other remedial writ, were consolidated on submission by agreement of the parties and the court.

■ On rehearing, appellants now argue that we were omissive in our treatment of

the case for not considering the petition for writ of certiorari, mandamus, or etc. Our failure to treat the question was not an inadvertence. We do not review the action of the trial court in refusing to quash the summons in such a case by extraordinary writs. The error, if any, must be raised on appeal from the final judgment. Ex parte Helveston, 267 Ala. 94, 100 So.2d 7, and cases there cited.

The writ is therefore denied.

The opinion is extended and application for rehearing is overruled.

GOODWYN, MERRILL and COLEMAN, JJ., concur.