152 So.2d 151

**N. Hamner COBBS**

v.

**John PATTERSON, Governor et al.**

**3 Div. 3.**

Supreme Court of Alabama.

April 11, 1963.

———◆———

Wm. Inge Hill and Wm. A. Oldacre, Hill, Hill, Stovall & Carter, Montgomery, for appellant.

O. S. Burke, Greensboro, and Rushton, Stakely & Johnston, Montgomery, for appellee Martin.

HARWOOD, Justice.

The appellant, as complainant below sought a declaratory judgment by his bill of complaint.

The bill alleges that the complainant, a taxpayer, is the owner and proprietor of The Greensboro Watchman, a newspaper which is now and for many years past has been published weekly in Hale County, Alabama. The Greensboro Watchman is of general circulation in Hale County and is wholly printed there.

The bill further alleges that in general election set for 5 December 1961, there was to be submitted to the electorate for possible adoption 45 proposed amendments to the Constitution of Alabama; that one of the appellees, John Patterson as Governor of Alabama, had the responsibility for the publication of the notices of the said election in each county in Alabama, and in carrying out such duty, he designate The Moundville News as the paper wherein the notice of the election was to be published for Hale County. The bill avers that The Moundville News is owned and published by the appellee, Richard Martin, and does not qualify legally for the publication of said election notices in that The Moundville News is not printed in whole or in part in Hale County as required by Title 7, Section 713, Code of Alabama 1940. The portion of Section 713, supra, pertinent to this review reads as follows:

"* * * all publications required by any law or mortgage or other contract to be published in a newspaper *must be printed in whole or in part and published in the county in which the advertisement is published* and must be published in a newspaper printed in the English language which has a general circulation in the county in which it is published, which newspaper shall have been mailed under the second class mailing privilege of the United States post office department from the post office where it is published for fifty-two consecutive weeks. Provided, that if there is no newspaper printing plant in the county where the advertisement is published, * * * the printing may be done in

another county in the State of Alabama." (Italics ours.)

It is further averred that The Greensboro Watchman is qualified to publish said election notices and that the cost of publishing the notices of the submission of the proposed constitutional amendment will be $2,461.92, and that the issuance of the voucher for said sum to appellee Martin would be illegal disbursement of funds.

Other facts necessary to show the existence of a justiciable controversy and the propriety of a declaration of rights as requested by the appellant, are shown.

By amendment, Agnes Baggett as State Treasurer, was struck as a party respondent, answers were filed by the remaining appellees, John Patterson, as Governor of the State of Alabama, and Richard Martin.

On 8 November 1961, the parties entered into a stipulation in open court to the effect that both The Moundville News and The Greensboro Watchman should publish the proposed election notices, and if it be determined that The Moundville News was qualified to publish said notices, then the appellant should forego any claim for publication of the notices in The Greensboro Watchman; otherwise the appellant should be paid at the rate prescribed by law.

The sole issue presented on this review is whether The Moundville News is qualified to publish said notice in view of the provisions of Section 713, supra.

In the court below Mr. N. Hamner Cobbs testified that he was the publisher, editor, and owner of The Greensboro Watchman, and had been for the past 21 years, and that he was a resident of Greensboro in Hale County, and a taxpayer in said county.

The Greensboro Watchman is a newspaper of general circulation in Hale County and has been in continuous publication in that county for some 84 years. The Greensboro Watchman is published in the English language and is printed in Hale County, Alabama, and now has, and for many years in the past, has had second class mailing privileges, and its business location has been in Greensboro, Alabama, since its founding in 1876.

Mr. Cobbs further testified that he was familiar with the operation of The Moundville News which was organized in the middle 1950's. It is published in Hale County, and mailed through second class mailing rights at the Moundville post office. It is not printed in Hale County and has never been printed in Hale County to the witness' knowledge, though its predecessor, The Hale County News, was once both printed and published in Moundville.

Mr. Cobbs testified he can find no evidence of a printing plant capable of printing a weekly newspaper and that there is no tax assessment for a printing plant in Hale County, other than that of The Greensboro Watchman. Mr. Richard Martin, one of the appellees, owns The Greene County Democrat as well as The Moundville News, and the latter paper is printed in Eutaw, Greene County, Alabama, on the printing press of The Greene County Democrat.

Mr. Cobbs further testified concerning the words "printed in part," that historically he had never known a newspaper, weekly or daily, in Alabama that was printed entirely within its own plant, all of them having parts printed on the presses outside their own plants and counties. Some of the larger dailies carry a "This Week" magazine which is printed in New York. Most of the comic strips are printed outside of the south. The Greensboro Watchman itself has run "Rural Alabama," prepared by the Alabama Extension Service as a supplement. It was printed out of Hale County with The Greensboro Watchman masthead inserted in his printing plant in Greensboro. This "ready print" material comes to local newspapers with state, national, and international news already printed, usually on one side, with additional matter to be printed in the local newspaper shops.

Mr. Cobbs further testified that the very first process undertaken in the printing of a

newspaper is the gathering of material to be published. In the mechanical aspect the first step is the setting of type, either by linotype or using hand fonts, and making up the composition of the paper. When this step is completed, "you have the metal which will make the impression or imprint on the paper." The third step is the actual printing, and consists of imprinting a sheet of paper, and until this last process is completed a newspaper is not printed. Mr. Cobbs stated that in newspaper trade the newspaper is not printed until the final process is done and the type imprinted on the paper.

On cross examination Mr. Cobbs testified that the gathering of news and the setting of type is no part of the actual printing of a newspaper.

By agreement an affidavit of the tax assessor, Mr. C. R. Lawson, of Hale County, was received in evidence. This affidavit averred that there was no assessment in the name of Richard Martin or in the name of The Moundville News upon the records in the office of the tax assessor of Hale County.

Mr. Thomas Vaughan, an employee of The Greensboro Watchman, testified that several years ago The Hale County News had a printing press in Moundville but to the best of his knowledge there had not been any printing press in Hale County other than that of The Greensboro Watchman for some six or seven years. Mr. Vaughan further testified that he was a linotype operator and in a broader terminology, a printer, and that a newspaper cannot be printed without a printing press.

Mrs. Clyde R. Shipley, Editor of The Moundville News, was called as a witness by the complainant. Upon request of counsel for complainant the court granted to appellant the privilege of asking Mrs. Shipley leading questions in that she was an adverse witness.

Mrs. Shipley testified that The Moundville News was published in Moundville in that it had second class mailing privileges at the Moundville post office. The news gathering, solicitation of advertising, billing and collections were all done in Moundville, and an office was maintained there. In the first publication of The Moundville News in July 1954, the masthead contained the words "The Moundville News, established July 1, 1954, a weekly published each Thursday," was set up in Moundville, and it has never been changed, and no other type that she knew of had ever been set up other than the one masthead. All other type setting for The Moundville News has been done in Eutaw in Greene County at The Greene County Democrat plant, which is owned by Richard Martin. The printing of the paper and the impressing of the print on the newspaper is all done in Eutaw.

In Arthur v. Moller, 97 U.S. 365, 24 L.Ed. 1046, it is stated that Webster defines "to print" as: " * * * (2) to take an impression of; to copy or take off the impress of; to stamp (3). Hence, specifically to strike off an impression of or impressions from types, stereotypes, or engraved plates, or the like by means of a press." Substantially similar definitions of "print," or "to print" may be found in LeRoy v. Jamison, 15 Fed.Cas. 373; Daly v. Beery, 45 N.D. 287, 178 N.W. 104; Forbes Lithograph Mfg. Co. v. Worthington, 1 Cir., 25 F. 899.

The verb "print" means "to make an impression with inked type" and is not synonymous with "publish" which means to make public. In re Publishing Docket in Local Newspaper, 266 Mo. 48, 187 S.W. 1174. In Bragdon v. Hatch, 77 Me. 433, 1 A. 140, it was held that the word "printed" as used in a statute requiring notice of foreclosure to be published in a newspaper printed in the county, does not include a newspaper published in the county, as a newspaper may be published in a county and yet not printed there.

The basic logic of the above enunciations is self evident.

Applying these principles to the facts presented in the present appeal will necessitate a reversal of the decree of the lower court.

Our statute requires that all publications required by any law be published in a newspaper *printed in whole or in part and published* in the county in which the advertisement is published, *provided* that if there is no newspaper printing plant in the county where the newspaper is published then the printing may be done in another county in Alabama.

Concededly, The Moundville News, having a second class mailing privilege in the Moundville post office, and mailed there, is published in Hale County. Vick v. Bishop, 252 Ala. 250, 40 So.2d 845.

The uncontradicted evidence presented below shows that in 1954, the masthead of The Moundville News was set up in Moundville, in Hale County. This masthead was then taken to Eutaw, in Greene County, and has been used ever since in printing The Moundville News on the presses of The Greene County Democrat. Since 1954 no actual printing of any part of The Moundville News has been done in Hale County.

As we interpret appellee's brief, it is contended that since the news material going into The Moundville News is gathered in Hale County, and its business affairs are conducted in Hale County, and the masthead was originally set up in Hale County, The Moundville News must be deemed to be printed as well as published in Hale County.

Counsel further contends that under Vick v. Bishop, supra, the setting up of the masthead in Hale County must be deemed to constitute "printing in part" in Hale County.

A reading of the opinion in Vick v. Bishop, supra, shows that the court was concerned solely with the question as to whether a certain newspaper was "published" in Coosa County, and not with whether the paper was "printed in whole or in part" in Coosa County. It is true that in the opinion, in setting forth certain of the language of Section 713, after the words "printed,", there is added in parenthesis "(that is set up in type)" or "(set up in type)," and after "printing" is added "(setting up in type)."

We do not think this should be deemed an adjudication that "setting up in type" is "printing." The ratio decidendi of the opinion was the question of "publishing" and that portion dealing with "printing in whole or in part" being beyond the ratio decidendi, and unnecessary, is at most dictum, and we might add, parenthetical dictum.

Further, we think the proviso at the conclusion of Section 713, supra, when read with the entire section, makes it crystal clear that if there is only one printing plant in a county, and a newspaper is printed in whole or in part in the plant and published in the county, then that newspaper only is qualified to publish the public notices required by law to be published in that county.

Under the evidence no part of The Moundville News was printed in Hale County, since the entire paper including the masthead was printed on the premises of The Greene County Democrat. The setting up of the masthead in Hale County some seven years previously, cannot be deemed a printing in Hale County. While setting type is an essential preparatory step in printing, preparations for an ultimate act does not constitute the doing of the act. Setting type is no more printing than acquiring bait and tackle is fishing.

If the argument of counsel be carried to its ultimate conclusion, then any large newspaper in Alabama, by setting a line or so of type in many counties, and carrying the type to its printing plant, would be deemed to be printed in whole or in part, if the paper were later published in the counties where the line of type was set. The wording of Section 713 denies such legislative intent.

For the reasons set forth, the decree of the lower court must be reversed. The appellant is entitled to the relief prayed for in his complaint.

The judgment is reversed, and remanded to the lower court for action in accord with this opinion.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.